CASE 37—ACTION TO RECOVER DAMAGES FOR THE DEATH OF PLAINTIFF'S
INTESTATE—JUNE 18.

# Louisville & N. R. R. Co. v. Cummins' Admr.

### APPEAL FROM TODD CIRCUIT COURT.

JUDGMENT FOR PLAINTIFF AND DEFENDANT APPEALS.     REVERSED.

RAILROADS—CARE REQUIRED AT STREET CROSSING—INTOXICATION AS
CONTRIBUTORY NEGLIGENCE—INSTRUCTIONS TO JURY—DUTY TO
HAVE FLAGMAN AT CROSSING.

Held: 1. In an action against a railroad company to recover dam-
ages for the death of a person struck by a train at a street cross-
ing, it was error to instruct the jury that it was defendant's
duty to "exercise the highest degree of care to avoid injury to
persons at said crossing which was consistent with a prudent
management of defendant's road and trains," as the court should
have instructed the jury that the duty of both parties as to
care was reciprocal, it being defendant's duty to exercise such
care as to signal, speed, and lookout as might usually be ex-
pected of ordinarily prudent persons operating a railroad under
like circumstances, and the duty of plaintiff's intestate to use
such care as might usually be expected of an ordinarily prudent
person situated as he was to learn of the approach of the train
and to keep out of its way; and it being incumbent on both
parties, if the crossing was especially dangerous, to exercise
increased care commensurate with the danger.

2. The fact that plaintiff's intestate was intoxicated at the time
he was struck does not affect the rights of the parties, unless by
reason of his intoxication he failed to exercise such care for his
safety as might ordinarily be expected of a sober person of ordi-
nary prudence situated as he was, and, but for such failure,
he would not have been injured.

3. In cities and towns where the population is dense, and, from the
number of persons passing, the danger to life is great, it is
the duty of a railroad company to moderate the speed of its
trains approaching street crossings, and to take such other pre-
cautions as the circumstances demand for the proper security
of human life.

4. Where a person on foot was struck by a train at a street cross-
ing in a small town at 10 o'clock at night, it appearing that,
while the view was obstructed, the train could be seen by him

before he reached the track, and that ordinary signals were adequate to apprise him of the danger, it was error to instruct the jury as to the company's duty to have a flagman at the crossing, though that precaution might have been properly required as to other persons and under other circumstances.

PERKINS AND TRIMBLE, FOR APPELLANT.

### POINTS AND AUTHORITIES.

1. The evidence is not sufficient to support the verdict.
2. The court erred in instructing the jury, especially in interlining instruction No. 3.
3. The court erred in requiring of defendant in instruction No. 1 "the highest degree of care to avoid injury to persons at the crossing consistent with a prudent management of defendant's road and trains."
4. The verdict is excessive. C. & O. R. R. Co. v. Perkins, 20 Ky. Law Rep., 608; Louisville City Ry. Co. v. Weams, 4 Ky. Law Rep., 287; C. & O. R. R. Co. v. Gunter, 21 Ky. Law Rep., 1803; L. & N. R. R. Co. v. Teaf's Admr., 21 Ky. Law Rep., 64.

E. W. HINES, ATTORNEY FOR APPELLANT.

1. There was such contributory negligence as entitled defendant to a peremptory instruction. 3 Elliott on Railroads, sec. 1172; Rupard v. C. & O. R. R. Co., 88 Ky., 280; L. & N. R. R. v. Survant, 19 Ky. Law Rep., 1576.
2. The court erred in instructing the jury that the highest degree of care consistent with the prudent management of defendant's train was required. Louisville City Ry. Co. v. Weams, 80 Ky., 420.
3. It was error to modify the instruction asked by defendant, as to defendant's duty to look and listen by inserting the words: "If by so doing he could discover his danger."
4. There being no proof as to the power of the decedent to earn money the verdict is excessive. 3 Elliott on Railroads, sec. 1378, 40 L. R. A., 131 and note.

S. WALTON FORGY, FOR APPELLEE.

The crossing where decedent was killed is in the center of the town and in the most important business part of the town, and is more than ordinarily dangerous. Deceased was attempting to cross the track in the night time. By reason of the cars

Louisville & Nashville R. R. Co. v. Cummins' Admr.

and the freight depot he could not see the approach of the train from the south. Being a stranger in the town, he was told to go across the track to the east side and enter the hotel. He attempted to do so, and just as he reached the track a passenger train, belated for some reason, rushes up and he is struck and killed. There was an engine and cars on his left, headed to the south. In watching this and getting out of its way, he is struck by a train going north. The defendant had no watchman at this crossing.

It gave no signal of its approach by bell or whistle.

Contributory negligence was alleged, but not proven.

The deceased was twenty years of age and in good health, and the verdict for $5,000 is not excessive. L. & N. R. R. Co. v. Hackman, 17 Law Rep., 81; N. N. & M. V. Co. v. Stuart's Admr., 18 Ky. Law Rep., 347.

JOSEPH H. LEWIS, FOR APPELLEE.

1. The instruction that it was the duty of defendant "to exercise the highest degree of care to avoid injury to persons at said crossing which was consistent with a prudent management of defendant's road and trains "was based upon or given in connection with a recitation of existing circumstances rendering that crossing unusually dangerous to a large number of the traveling public and making it the duty of appellant to keep a watchman there; consequently, the court did not err, nor was the jury misled by the instruction.

2. The qualification in instruction No. 3 was not prejudicial to defendant and properly submitted the facts to the jury.

3. The evidence as to decedent's power to earn money was as satisfactory as it has been the usual rule of the court to require. He was shown to be twenty years of age. a laborer and in good health, and that is sufficient evidence on which to base a verdict.

OPINION OF THE COURT BY JUDGE HOBSON—REVERSING.

This action was instituted by appellee, as the administrator of his son, E. R. Cummins, to recover for the death of his intestate on the ground that he had lost his life by reason of the negligence of appellant. The proof shows that the intestate was struck by a train and killed at Guthrie, on Christmas night, about ten o'clock, in the year 1897. The train which struck him was a passenger train

coming from the south on the main track of the railroad. It stopped at the coal chute for coal about six hundred yards from the station. Between the coal chute and the station was a street crossing. The view of the approching train was obstructed at this crossing by a freight depot on one side of the track and a mill on the other. There was also a side track on either side of the main track, and on these some cars were standing. The intestate was looking for a place to stay all night and started from a saloon on the west side of the track to a hotel on the east side of it, and, according to the evidence for appellee, as he was passing along the street, going from the saloon over to the hotel, just as he reached the railroad, was struck by the train and killed. The evidence for the appellant tended to show that the deceased, when he reached the railroad, instead of passing over the track, turned south, and walked along it, and was thus struck a little south of the crossing, and dragged back on the crossing, where his body was found. This proof also tended to show that the deceased was quite drunk; that the train was running about eight miles an hour; that the track was straight, and the light of the headlight upon the crossing; that the bell of the train was ringing; and that, after the intestate's peril was discovered, the alarm signal was given and the brakes applied, but he was too close for the train to be checked before it struck him. The proof also shows that the crossing was especially dangerous by reason of the view being obstructed, and that it was much used by the public, being in a frequented part of the town. On these facts the court instructed the jury as follows: (1) "It was the duty of defendant, on the occasion in question, in approaching the crossing where the decedent, Cummins, was killed, to slacken the speed of its train, keep a

lookout for persons upon or crossing its track, give reasonable signal or warning of the train's approach by sounding the bell or whistle, and exercise the highest degree of care to avoid injury to persons at said crossing which was consistent with a prudent management of defendant's road and trains. If the location of said crossing, the amount of public travel thereon, and the existence and proximity of permanent buildings obstructed the view of the railroad and the view and hearing of approaching trains rendered the crossing unusually dangerous to a large number of the traveling public, then it was the duty of defendant to keep a watchman, or adopt and use some other reasonably safe mode of warning travelers of approaching trains; and if the jury believe from the evidence that on the occasion under investigation the defendant, its agents or servants operating trains, failed to use ordinary care to warn the decedent, Cummins, of the approach of its train, and that by the negligence of the defendant, or its said agents or servants, the said Cummins was struck and killed by defendant's engine or cars, then the jury should find for plaintiff such compensatory damages, if any, as he sustained as the direct and natural result of said negligence and killing, not exceeding, $15,000, the amount claimed, unless they should further believe from the evidence that in receiving the injury Cummins was himself guilty of negligence to such an extent that, but for his own negligence, the accident would not have happened." (2) "As used in the instructions, 'compensatory damages' means such a sum of money as will fairly and reasonably compensate plaintiff for the destruction of his intestate Cummins' power to labor and earn money." (3) " 'Ordinary care' means such care as ordinarily prudent persons would use under similar

circumstances involving their own interests. 'Negligence' is the absence of ordinary care." These are all the instructions given on the trial, except two relating to contributory negligence.

In railway Co. v. Barbour, 21 R., 226 (51 S. W., 159), and Railway Co. v. Gunter 21 R. 1803, (56 S. W., 527), this court considered fully the law applicable to railroad crossings, and under the principles announced in these cases the foregoing instructions did not properly present to the jury the law governing the rights of the parties. They go too far. They are also defective in not informing the jury that the duty of both parties as to care was reciprocal, and in imposing a different degree of care on the appellant from that imposed on the deceased. In using the railroad and the street crossing both parties were required to exercise the same degree of care. It was incumbent on appellant to give such notice of the approach of the train to the crossing, to run the train at such speed, keep such lookout and use such care to avoid injury to persons thereon, as might usually be expected of ordinarily prudent persons operating a railroad under like circumstances. It was incumbent on the intestate to use such care as might usually be expected of an ordinarily prudent person, situated as he was, to learn of the approach of the train, and keep out of its way. If the crossing was especially dangerous, it was incumbent on both parties to exercise increased care commensurate with the danger. (8 Am. & Eng. Enc. Law (2d. Ed.) 386-388. Also, cases above referred to, and authorities there cited). If appellant's servants operating the train failed to use proper care, and by reason of such failure the intestate was struck and killed while exercising proper care, appellant is liable. But, if the intestate failed to exercise such care as was required of him, and but for this the in-

jury would not have occurred, appellant is not liable, although there was also a want of proper care on its part. If the intestate was intoxicated at the time, this would not affect the rights of the parties, unless, by reason of his intoxication, he failed to exercise such care for his safety as might be ordinarily expected of a sober person of ordinary prudence, situated as he was, and, but for such failure, would not have been injured; in which event appellee can not recover. (7 Am. & Eng. Enc. Law. (2d Ed.) 441 note to Kingston v. Railroad Co. (Mich.) 40 L. R. A. 131), (s. c. 70 N. W., 315, 74 N. W., 230). Railroad trains must make time, and no rate of speed at ordinary crossings is usually negligence; but in cities and towns where the population is dense, and, from the number of persons passing, the danger to life is great, a different rule applies, and in such localities it is the duty of appellant to moderate the speed of its trains, and take such other precautions as the circumstances demand for the proper security of human life. Railroad Co. v. McCombs (21 R., 1232) 54 S. W., 179; Railway Co. v. Keelin's Adm'r (22 R. 1942) 62 S. W., 261, and cases cited. In several cases this court has followed the rule generally announced by the authorities that, where a much-used public crossing is exceptionally dangerous, and the statutory notice of the approaching train is inadequate for the safety of persons using the highway, by reason of obstruction of view, the speed of the train, and the like, it is proper to submit to the jury the question whether the railroad company, in the exercise of proper care, should have kept a flagman at the crossing, or should have adopted some other adequate precaution for the safety of the traveling public. Valley Co. v. Stuart's Adm'r, 99 Ky., 496 (18 R., 347) (36 S. W., 528); Railroad Co. v. Goetz's Adm'r, 79 Ky., 442 (3 R., 441) 42 Am. Rep., 227. But we do not think

the facts of this case bring it within the rule. Considering
the time of night the collision occurred, the speed of the
train, the travel on the crossing at the time, the fact that
the intestate was on foot and all the circumstances shown
by the proof we do not see anything in the record to put
this crossing on a different plane from those in nearly all
the small towns through which the railroad runs; and to
impose on the railroads of the State the burden of main-
taining watchmen at all hours and under all circumstances,
at such crossings, for the protection of footmen, would
be unreasonable. The collision occurred at ten o'clock
at night. It was a regular train. People were looking
for it. There does not appear to have been any one at
the crossing but the intestate, and there was no unusual
reason for the anticipation of danger there. The track
was straight to the coal chute. The train had stood at the
chute several minutes. It stopped at the station only one
or two hundred feet north of the crossing. It
was visible to the intestate before he reached the track,
and there is nothing in the case to show that the usual
signals were inadequate to apprise him of the danger.
The reason on which the decisions rest in which instruc-
tions have been sustained requiring the maintenance of
gates and flagman at crossings is the inadequacy of the
ordinary signals for the safety of travelers on the highway.
There is great force in this, where the speed of the train
is thirty or forty miles an hour, and the sound of the usual
signals will not reach a team driving along the highway
in time for it to avoid the danger. But the intestate had
only to step to one side. The speed of the train was lim-
ited, and, though the view was obstructed, the train could
be seen by him before he reached the track. The ordinary
signals were adequate to apprise him of the danger, and he

can not recover because precautions were not taken which,. as to others, and under other circumstances, might be properly required. Judgment reversed and cause remanded for a new trial and further proceedings consistent with this opinion.

Chief Justice Paynter and Judges Guffy and White dissent.