## Louisville & N. R. Co. v. Elzey.

May 28, 1946.

408

H. W. Willen, H. T. Lively, J. P. Hamilton, and J. P. Helm, Jr. for appellant.

Mahan & Mahan and Edwin O. Davis for appellee.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER —Reversing.

On the night of December 24, 1944, appellee's automobile was stalled on appellant's railroad tracks. Appellee had three guests in the car at the time, one of whom was a man, two of whom were boys. The car was stalled at a position which afforded no traction, and the occupants were unable to move it from the tracks. In a few minutes a freight train operated by appellant crashed into the car and practically demolished it, but no one was injured. This suit was instituted to recover the difference between the value of the car immediately before the collision and its value immediately afterwards. Judgment was entered upon a verdict in favor of appellee in the sum of $850. Three grounds are urged for reversal: The Court erred (1) in overruling appellant's motion for a peremptory instruction; (2) in imposing upon appellant the duty of traveling at such speed as might usually be expected of ordinarily prudent operators of railroads under like or similar circumstances to those proven in the case; and (3) in refusing to give an instruction on contributory negligence.

Appellee's testimony as to how the car stalled is

uncontradicted. He stated that the crossing, which is at the top of an incline at a turn of a country road in Jefferson County, was narrower than the road, and constructed of loose gravel. That when he drove onto the crossing the gravel, wet from rain, slipped from under his wheels, causing his car to skid off of the crossing, and when the car came to a stop, the wheels were between, and the running board resting on, the rails. Shortly after the car stalled, its occupants heard the train blow for the crossing. The men immediately proceeded in the direction of the train, striking matches and otherwise trying to attract the attention of the train crew, and one of the boys turned on all the lights of the car in an endeavor to attract the attention of the crew to the danger ahead. Appellee further testified—but in this he was contradicted—that the engineer did not apply his brakes until he was within 50 feet of the automobile, and when it passed him 100 feet from the crossing, the engineer was "hitting a hard throttle". It is appellee's contention that appellant was negligent in the maintenance of the crossing, thus causing him to become stalled thereon; and was negligent in the operation of the train, in that the engine crew was not keeping a lookout ahead. The train crew testified that they saw the lights on the car when they were a quarter of a mile north of the crossing. They could not see an automobile, but realized something must be wrong and immediately applied the emergency brakes. At the time of the application of the brakes, the train was running about 35 miles per hour, and the engine came to a stop after five cars had passed over the crossing. The night was foggy, and rain was falling at the time of the accident. The train was composed of one engine, thirty-two loaded cars, and one caboose. An air-brake inspector testified as an expert on the application of air brakes on railroad locomotives and cars; and stated that, under a formula made from actual tests, a train of the weight and size of the one in question, running at 35 miles per hour on a dry, level track, could be stopped in a distance of 1536 feet from the place the brakes first are applied. The track north of the crossing is practically level. Appellee testified that he had worked on railroads for four years, and that a train of that size and weight, and traveling at that speed, could be stopped in 200 feet. This testimony is incredible; but since a collision of this sort is bound to check the progress of a train and cause it to stop in a

shorter distance than it would if unobstructed, and the engineer testified he discovered the peril when he was approximately one quarter of a mile from the crossing, and appellee testified that the brakes were not applied until the train was within 50 feet of the crossing, the question of whether the egnineer applied the brakes immediately upon discovery of the peril was one for the jury's determination.

Appellee's testimony in respect to his contention that the crossing was unsafe shows the crossing to have been narrower than the highway proper; that the headlights of his car were on and in perfect condition; but, on account of the abrupt turn and the incline of the approach, it was impossible to see over the hood of an automobile in time to locate the exact boundary of the crossing until too late to change the course of the car. In Louisville & N. R. Co. v. Cayce, 271 Ky. 467, 112 S. W. 2d 682, 685, the facts were similar to those involved herein. Cayce's automobile skidded on wooden boards at a crossing, and became lodged on the rails. He then attempted to flag the train, which collided with the car. The accident happened at night, and Cayce's lights were burning. The crossing was narrower than the highway on either approach, although the crossing itself was 22 feet wide. (In the instant case there was testimony that the crossing was only eight or nine feet wide.) In the Cayce case, as in this case, the road, in approaching the crossing, turned abruptly to the right and then to the left, and was on an incline. Failure to maintain a safe crossing was the only negligence relied upon. In denying the railroad's contention that it was entitled to a peremptory instruction, the Court said:

"In view of the danger of going off the traveled part of the road, a danger which the lights of a car would not reveal, it hardly can be said that planks extending across the traveled way only would make a suitable crossing. * * *

"In the very nature of things the proper width of a crossing, as well as its suitability and safety, will vary with the circumstances of each case, and it would be a difficult undertaking for the court to tell the jury how wide a crossing should be, or to define what was a suitable and reasonably safe crossing."

And so we hold, in the circumstances of this case,

the question of the safety of the crossing also is one for the jury.

The second ground for reversal, however, is well taken. The rule in respect to speed at crossings in the open country is different from that at crossings in cities. It is a well-established rule in this jurisdiction that a railroad is not guilty of negligence in operating a train over a public crossing in open country at a high rate of speed. Louisville & N. R. Co. v. Locker's Adm'rs., 182 Ky. 578, 206 S. W. 780; Louisville & N. R. Co. v. Cummins' Adm'r., 111 Ky. 333, 63 S. W. 594, 23 Ky. Law Rep. 681; Parkerson v. Louisville & N. R. Co., 80 S. W. 468, 25 Ky. Law Rep. 2260. The only duties appellant owed appellee in the operation of its train were to maintain a lookout ahead, and to use all the means at its command to avoid the collision after discovering appellee's peril. Because of the error in imposing the duty to maintain reasonable speed upon appellant, the judgment must be reversed.

The third ground for reversal is without merit. The only testimony as to how the car was stalled completely exonerates appellee of having been guilty of contributory negligence; therefore, the evidence did not warrant the instruction contended for.

The judgment is reversed, with directions that appellant be granted a new trial, to be conducted in a manner consistent with this opinion.