## Fryrear v. Kentucky & I. Terminal R. Co., Inc.

May 10, 1949.

Lawrence S. Grauman and Marvin Snyder for appellant.

Hubert T. Willis and Bullitt & Middleton for appellee.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER —Affirming.

The appeal has been prosecuted from a judgment entered on a directed verdict in favor of appellee, Kentucky & Indiana Terminal Railroad Co., Inc., the defendant below. The action was brought to recover damages for injuries sustained in a collision between the automobile owned and being driven by appellant and an engine operating in a reverse position pulling twelve freight cars, which was owned and being operated by appellee.

The accident occurred at a railroad crossing on United States Highway No. 31W within, but near the southerly limits of, the City of Louisville. 31W, commonly called Dixie Highway, is the main road

from Louisville to the South passing through Fort Knox. Traffic thereon, particularly between Louisville and Fort Knox, is perhaps heavier than on any other highway in the state. Appellant's mother was riding on the front seat and Mrs. Katheryn Lawrence and appellant's infant children were riding in the rear. They were driving from Valley Station to Louisville in a northerly direction on the four lane highway. A bus being operated by the Louisville Railway Company was traveling northerly in the easternmost lane. Appellant was driving in the westernmost lane for north bound traffic, slightly to the rear of the bus. Another automobile was proceeding ahead of appellant in her lane of traffic. South of the railroad tracks and to the east of the paved portion of the highway appellee had installed an electric flash signal to warn pedestrians and persons operating vehicles on the highway of the approach of trains to the crossing. The signal is seven feet ten inches in height and was in full operation at the time of the accident, but it was obscured from appellant's view by the bus which stopped approximately fifty feet from the crossing at a regular stop. Following the automobile immediately in front of her, appellant attempted to cross the railroad tracks. She testified that she was traveling approximately fifteen miles per hour. Other witnesses estimated her speed as high as twenty five miles per hour. When she discovered her peril she turned to her left, but was unable to avoid passing over the tracks. The collision followed. Appellant testified that neither the bell nor the whistle on the engine was sounded as a warning of the approach of the train to the crossing. She based her conclusion on the fact that she did not hear either, but would have heard both, had they been sounded. Mrs. Lawrence testified that she did not hear any bell rung or whistle blown, and Mr. Ernest S. Dobbins, who was driving south on the highway, testified that he did not hear the engine's bell ring or whistle blow, and he believed he could have heard the whistle if it had been blowing. Many witnesses for appellee testified that both the bell and the whistle were sounded for the crossing. The train was traveling between eight and ten miles per hour . The foreman of the train crew testified that he was sitting on the back of the engine, which, because the engine was in reverse position, would

be the forward end of the train, and on the south side thereof; that because of the houses obstructing the view of the trainmen they were unable to observe traffic on the highway south of the point of collision until they were practically in the highway's right of way. He stated that he looked for traffic both to the north and south and did not see appellant's automobile until "it was almost into us." He said that the engine came to a stop about fifty feet beyond the point of impact. The switchman stated that he was standing near the center and on the north side of the engine's tank. He looked in both directions for traffic but did not see appellant's automobile until the engine started over the intersection. He testified that it was impossible, by keeping a lookout to the south, to see beyond the bus until the observer was about midway of the crossing. The engineer testified that he was sitting in his cab, which was on the south side of the engine. He first saw appellant's automobile after he had started over the crossing. It was impossible to see down the highway until the observer was approximately in the middle of the crossing. He stated that he brought the engine to a stop in about thirty or forty feet from the point of impact. There was no evidence introduced to contradict the testimony of these witnesses.

Appellant contends that the Court erred in directing a verdict in favor of appellee because the evidence was sufficient to submit the case to the jury in respect to the negligence of appellee: (1) in failing to maintain a lookout; and, (2) in failing to give timely warning of the approach of the train to the crossing. Appellee contends that the Court properly directed the jury to find a verdict in its favor because the evidence discloses that it fulfilled its obligation to appellant in respect to every duty imposed by law upon it; and, if wrong in this contention, appellant was guilty of contributory negligence as a matter of law.

Our first inquiry, then, is in respect to the duties imposed by law upon a railroad operating within the limits of a municipal corporation of the first class, and then to determine whether appellee failed to perform such duties. If appellee did fail to perform any duty imposed by law upon it in respect to the operation of

its train at the crossing in question, and such failure, if any, on its part was the proximate cause of the collision, it would be liable to appellant for the injuries she sustained thereby, unless appellant was guilty of contributory negligence; and if under these circumstances, the evidence in respect to contributory negligence is conflicting the Court would be required to submit the case to a jury. On the other hand if appellee did not fail to perform a duty imposed on it by law, or, being negligent, if appellant was guilty of contributory negligence as a matter of law, appellee would be entitled to a directed verdict.

KRS 277.160 provides:

"Every railroad company shall cause signal boards to be placed and constantly maintained at each public highway where it is crossed by the railroad track at the same level, except that such boards need not be put up in any city unless required by the city authorities. * * *"

KRS 277.190 provides:

"Every railroad company shall provide each locomotive engine running over any of its lines with a bell of ordinary size and a whistle. The bell shall be rung or the whistle sounded, outside of cities, * * *. In cities such signals shall be given as the legislative body of the city requires."

KRS 83.080 provides:

"The courts shall take judicial notice of the ordinances of the city (of the first class), and the printed copy officially published by the city may be read as evidence in any trial in which the same may be competent as evidence without proof of the due passage and approval of the ordinances * * *."

The requirement of KRS 83.080 that the Courts shall take judicial notice of ordinances of cities of the first class does not extend to the substance of the ordinance so as to relieve a litigant relying on it of the obligation to introduce it in evidence. It merely recognizes the official publication of the ordinance by the city as proof that such ordinance was duly passed and approved. No ordinance was introduced in evidence concerning the duties of a railroad in approaching a cross-

ing at graded level. Therefore, the case must turn on the application of the common law rule which is: A railroad must give reasonable and timely warning to the public of the approach of its trains to a grade crossing, Louisville & N. R. Co. v. Curtis' Adm'r, 233 Ky. 276, 25 S. W. 2d 398. In the recent case of Louisville & N. Railroad Co. v. Craig, 310 Ky. 43, 219 S. W. 2d 954, we held that the placing of a wig-wag signal at a crossing inside the limits of a city, and maintaining it in working condition, satisfied the requirement of the common law rule. In this case appellant provided and maintained in working condition an electrically illuminated flash signal to warn users of the highway of the train's approach to the crossing. It is conceded by appellant that this signal was in full working condition and flashing before and at the time of the happening of the accident. It likewise is conceded that the warning signal was placed at a location which, except for other traffic, would have been clearly visible to the operator of an automobile proceeding north on the highway approaching the crossing. But it is insisted that the signal should have been placed at a location free from obscurity by the intervention of other traffic moving along the highway within the line of vision of appellant. With this contention we cannot agree. To uphold it would be to impose upon appellee a duty not contemplated by the rule, viz., to take charge of vehicular traffic at railroad crossings and to direct it in such manner as to insure at all times clear vision of the sign which would be clearly visible were it not for the momentary intervening obstruction over which the railroad company has no control. The warning signal was placed by appellee at the customary distance from the crossing, was erected on a post or pedestal seven feet and ten inches above the level of the highway. In this particular case, appellant admitted she was familiar with the highway and the crossing at that point, which, of course, included knowledge that the warning sign was there. With this knowledge, since, through no fault of appellee, she could not see the signal she knew was there, she was obliged to make use of all her senses in other ways to determine whether a train was approaching. She traversed a distance of fifty feet from the front end of the bus to the railroad tracks, and instead of blindly following the automobile

preceding her she should have determined for herself whether a train was approaching. But aside from that, eight disinterested witnesses and three members of the train crew testified that the engine's bell was ringing and its whistle blowing as the train approached the crossing. Some of the witnesses were passengers on the bus, others were in their residences near the scene of the accident. One witness stated that the train was making so much noise that she could not hear her radio in the room next to her. Another witness testified that she was at a grocery store, and the sound of the whistle was so loud it startled her. Another heard the bell ringing and the whistle blowing though five hundred feet distant from the crossing. Opposed to this testimony Mrs. Lawrence, the guest in the back seat, said she did not hear the bell ring or the whistle blow. A disinterested witness, who was driving a truck more than a square away from the crossing, stated that he did not hear the bell ring or the whistle blow but that he was not paying any particular attention to the bell or whistle, still he believed he could have heard the whistle if it had sounded. The testimony of these two witnesses is negative in its character and is not sufficient to amount to more than a scintilla of evidence. Since the decision of Nugent v. Nugent, 281 Ky. 263, 135 S. W. 2d 877, we have adhered to the rule that a mere scintilla of evidence is not sufficient to authorize submitting the case to the jury, although previous to the Nugent case we had held that a scintilla was sufficient to authorize the submission of the case although the verdict of the jury would have to be set aside as being against the weight and preponderance of the evidence, if no more than a scintilla was relied on to support the verdict. Appellant was the only other witness testifying in support of her contention on this point. She stated that neither the bell was ringing nor the whistle blowing as the train approached the crossing, but she admitted that she arrived at that conclusion because she did not hear them and if either had been sounded she would have heard them. We believe that this evidence was sufficiently positive to elevate it beyond a mere scintilla. But it was testified to by the person most interested in receiving a verdict against the railroad company, and for this reason cannot be given the weight to be accorded positive

testimony of disinterested witnesses. We might hold such evidence to be sufficient to submit a like issue to the jury if the only evidence to the contrary were introduced by interested witnesses on the other side; but here we have, in addition to the three interested witnesses for the railroad (its employees), the positive and direct statements of eight disinterested witnesses that not only was the bell being rung and the whistle sounded, but both created unusual noise and warning of the approach of the train to the crossing. Under these circumstances we are of the opinion that the great weight and preponderance of the evidence was so in favor of appellee that a verdict for appellant at the hands of the jurors would have had to be set aside, if as appellant contends, it was the duty of appellee to ring the bell and blow the whistle. Therefore, under the rule in the Nugent case, the evidence in support of the contention that neither the bell was being rung nor the whistle being sounded was insufficient to submit this item of alleged negligence to the jury, if it could be considered on the question of appellee's negligence in any case.

We think that there is no merit in the contention that the employees of appellee failed to maintain a lookout duty. It is extremely doubtful if the duty to maintain a lookout extends beyond keeping a watchful eye on the path of the train ahead and to territory in such close proximity as from which one might expect a traveler to proceed directly into the path of the train. But if the rule should be applied to the extent contended for, viz., that it was the duty of those operating the train to observe the highway for its entire length from the north to the south of the crossing, we do not see how such employees could have better fulfilled their obligation than the uncontradicted evidence discloses in this case. The foreman of the train crew was stationed on the forward end of the train and testified that he looked in both directions but did not see appellant's automobile until it had arrived at a place ten to twelve feet distant from the point of impact; another member of the crew was stationed midway between the engineer's cabin and the coal tender and he testified that he looked in both directions and did not see appellant's car until immediately before the impact; and finally the engineer himself stated that he was on the south side of the engine, was look-

ing ahead and to the south for approaching traffic and, did not see appellant's car until too late to avoid the collision. This evidence is uncontradicted. In approaching the crossing, the train passed a closely built up housing project, which for a certain distance beyond the parked bus, caused obstruction to the view from the engine south along the highway. The only thing that appellee could have done that it did not do was to stop its train before entering the crossing, and this, of course, it was not required to do. We are of the opinion that appellant failed to establish any negligence on the part of appellee, which could be reasonably calculated to constitute a proximate cause of the collision. That being true, it is unnecessary for us to discuss the contentions of the parties in respect to contributory negligence.

The judgment is affirmed.