**Alva Carr WADKINS' ADM'X, Appellant,**

**v.**

**CHESAPEAKE & OHIO RAILWAY COMPANY et al., Appellees.**

**Woots WADKINS' ADM'R, Appellant,**

**v.**

**CHESAPEAKE & OHIO RAILWAY COMPANY et al., Appellees.**

Court of Appeals of Kentucky.

March 23, 1956.

Rehearing Denied Feb. 22, 1957.

J. W. McKenzie, Ashland, Jack R. Kibbey, D. G. Diamond, Vanceburg, Diederich & Lycan, Ashland, for appellants.

Porter M. Gray, Gray & Woods, Ashland, Harvey Parker, Jr., Vanceburg, for appellees.

WADDILL, Commissioner.

Alva Carr Wadkins and his brother, Woots Wadkins, were instantly killed on November 14, 1952, at about 11:00 a. m., when the automobile in which they were riding was struck by a train of the Chesapeake and Ohio Railway Company at a grade crossing located approximately 300 feet east of the corporate limits of Vanceburg. An action was instituted by the personal representative of each of the decedent's estate against the Chesapeake and Ohio Railway Company to recover damages sustained by each of their estates because of their deaths.

By agreement the suits were consolidated for trial, and at the conclusion of the evidence the court sustained the railroad company's motion for a peremptory instruction, directed the jury to return a verdict for the defendant in each action, and entered judgment dismissing the complaint in each case.

The sole question presented on this appeal of these consolidated actions is the correctness of the court's action in directing a verdict for the railroad company; hence we view the testimony to determine whether or not there was an issue of negligence which necessitated the submission of the cases to the jury.

The appellants urge that the railroad company was guilty of negligence: (1) In failing to give the required signals for a public crossing as provided by KRS 277.-190; (2) in permitting its right-of-way to become foul with shrubbery, vines, and fences which obstructed the view of persons using the grade crossing; and (3) in operating its train at a high and dangerous rate of speed over a dangerous public crossing.

On the morning of the accident Alva Wadkins and Woots Wadkins left the home of their parents in an automobile to go to a place in Ohio to procure employment. Their parents' home is located on a gravel road which extends in an easterly and westerly direction, adjacent to, on the north side of, and parallel with the Chesapeake and Ohio Railway right-of-way and tracks. This gravel road parallels the railroad track for a distance of approximately 650 feet east of the crossing in question and extends west of the crossing for approximately 200 feet. State Highway No. 10, which is used in traveling west from Russell to Vanceburg, also parallels the railroad tracks, but is south thereof. There is a short roadway that extends in a northerly direction from State Highway No. 10, over the railroad tracks, to the gravel road. When leaving the Wadkins home to gain access to route No. 10, vehicles must travel west on the gravel road approximately 280 feet and make a left turn to the south and cross the railroad tracks.

The Wadkins home is the sixth house east of the grade crossing and is located on the north side of the gravel road. The Pollitt home, later referred to is east of the Wadkins home, and approximately 650 feet east of the crossing.

Over this crossing there are two railroad tracks running east and west. The railroad tracks east of the crossing are straight for about 2,000 feet, and are at a slightly higher elevation than the gravel road.

When Alva and Woots Wadkins drove their car from the Wadkins home on the gravel road, headed in a westerly direction toward the crossing, a westbound freight train, traveling toward Vanceburg, and on the northernmost track, was heard to whistle above or in the vicinity of the Pollitt house. The automobile proceeded in a westerly direction ahead of the train. The testimony varies respecting the speed of the train from 30 to 60 miles an hour and the speed of the automobile from 10 to 30 miles per hour.

There is evidence that the standard crossing whistle, described as two longs, a short and a long, was given by the engineer on the train, and in addition, several short blasts of the whistle were sounded when it appeared that the automobile was

not going to stop for the grade crossing. Also, there is evidence the bell on the engine was ringing and the headlight on the Diesel was burning.

As Alva Carr Wadkins, the driver of the car, made a left turn off the gravel road to approach the crossing, he slowed down his automobile, and then suddenly speeded up, and the car came directly in front of the engine. Both Alva Carr Wadkins and Woots Wadkins were killed in the accident.

Only one witness, Ara Belle Dyer, a sister of the deceased Wadkins brothers, testified that neither the whistle nor the bell of the train was sounded. Of the twelve non-employee witnesses who were in the vicinity at the time of the accident, ten of them, including Ara Belle Dyer's father, who was standing by her side as the train approached, testified that they heard the train whistle, some stating that they heard it at one point, some at another. The other two non-employee witnesses gave testimony of a negative character as they merely stated that they did not hear the whistle blow. The four employee witnesses testified that the bell on the engine was ringing; that the standard crossing whistles were given, and that emergency blasts of the whistle were sounded as the train neared the crossing.

KRS 277.190 provides:

" * * * The bell shall be rung or the whistle sounded, outside of cities, at a distance of at least fifty rods from the place where the track crosses upon the same level any highway or crossing at which a signboard is required to be maintained, and the bell shall be rung or the whistle sounded continuously or alternately until the engine has reached the highway or crossing. * * *"

Since Nugent v. Nugent's Ex'r, 281 Ky. 263, 135 S.W.2d 877, the rule in this state is that when the evidence given at 'the trial, with all inferences that the jury could justifiably draw from it, is insufficient to support a verdict for the plaintiff, so that such a verdict, if returned, must be set aside, the court is not bound to submit the case to the jury, but should direct a verdict for the defendant. Our consideration of the instant case has led to a most careful re-examination of the opinion in the Nugent case, and we believe an exposition of the basis of that opinion will materially aid our decision and may assist circuit judges in deciding similar questions.

Clearly and expressly the Nugent case abolished what was known as the "scintilla" rule, which in substance was that *any* evidence supporting the plaintiff's cause required submission to the jury. The important question in that case was whether defendant's evidence, when arrayed against that of the plaintiff, so convincingly impaired the quality of the plaintiff's proof that the latter no longer would induce conviction in the minds of reasonable men. The test stated in the Nugent opinion for directing a verdict was whether or not it would be set aside as "palpably" or "flagrantly" against the evidence.

Perhaps the better basic approach is to consider the question of the directed verdict from the standpoint of the sufficiency of the plaintiff's evidence rather than the unconscionable aspect of a possible verdict in his favor. This calls for a restatement of the doctrine of the Nugent case in a more positive form. The single controlling question on a motion for a directed verdict, either at the close of the plaintiff's evidence or at the close of all the evidence, is whether or not the plaintiff has sustained the burden of proof by more than a scintilla of evidence. "More than a scintilla" may be defined as evidence of probative value having the fitness to induce conviction in the minds of reasonable men. See American Rolling Mill Co. v. Pack, 278 Ky. 175, 128 S.W.2d 187.

It is possible that initially sufficient evidence at the close of the plaintiff's case may lose every vestige of its persuasive character in the light of the defendant's evidence. Thus what was once more than a scintilla may, upon ultimate analysis, be no longer that sufficient quantum of proof required to present a true issue of fact to the

jury. To restate in another form the rule of the Nugent case, which was fundamentally sound, the governing principle is: When the evidence given at the trial with all inferences that the jury could justifiably draw from it would not support a verdict for the plaintiff, because the plaintiff's evidence whether taken alone or in the light of all the evidence is not of sufficient probative value to induce conviction in the minds of reasonable men, a verdict should be directed for the defendant.

It may be argued that in passing upon the probative value of the evidence the court is invading the province of the jury. Such argument overlooks the fact that the court has a very definite function to perform even in jury cases. It has long since been settled that the court may examine evidence to determine its sufficiency in law, and the exercise of the inherent power to take the case from the jury by directing a verdict does not violate the constitutional right of a jury trial. Nugent v. Nugent's Ex'r, 281 Ky. 263, 135 S.W.2d 877; Masonic Widows and Orphans Home and Infirmary v. City of Louisville, 309 Ky. 532, 217 S.W.2d 815; Gunning v. Cooley, 281 U.S. 90, 50 S.Ct. 231, 74 L.Ed. 720; Galloway v. United States, 319 U.S. 372, 63 S.Ct. 1077, 87 L.Ed. 1458.

It may also be argued that if we permit the trial court to consider the probative value of the plaintiff's evidence in the light of the defendant's evidence, we are allowing the court to determine questions of credibility and to weigh the evidence. To a limited extent this may be true. However, it must be noted that the court is not evaluating the evidence to determine the merits of the controversy, which is the jury's province, but it is exercising a judicial function in determining whether or not a jury issue has been presented. See Gunning v. Cooley, 281 U.S. 90, 50 S.Ct. 231. No reason is apparent why the trial judge may not render a value judgment on the sufficiency of the plaintiff's proof at the conclusion of all the evidence in the same manner as he may do at the close of the plaintiff's evidence. Yet no one would contend that the court may not examine the quality of the evidence at that earlier stage of the proceedings.

In the instant case the evidence of 14 witnesses was that the train in question gave adequate warning of its approach at the crossing by sounding its whistle or ringing its bell. The trial court was of the opinion that the opposing testimony introduced in behalf of the plaintiffs was not of sufficient probative value to create a jury issue. This case is almost identical with that of Fryrear v. Kentucky & I. Terminal R. Co., Inc., 310 Ky. 250, 220 S.W.2d 546. In that case two witnesses, in addition to the plaintiff, testified that no signal was given by a train approaching a crossing. We expressly stated in the opinion that this evidence "was sufficiently positive to elevate it beyond a mere scintilla." However, there were contradictory statements made by eight disinterested witnesses. It was held in substance that the quality of the defendant's evidence so overwhelmed that of the plaintiff that the trial court was justified in directing a verdict for the defendant on this issue.

We are of the opinion that the trial judge in this case was properly exercising a judicial function when he determined as a matter of law that a true jury issue was not presented with respect to the violation of statutory duties by the railway company because plaintiff's evidence was not of sufficient probative value. The directed verdict was proper as to this charge of negligence.

It is further urged that the railroad company was negligent in permitting its right-of-way to become foul with shrubbery, vines, and other vegetation thereby causing the grade crossing in question to become very dangerous for the public to use. While there was evidence that some weeds and vines had been permitted to grow near the company's right-of-way fence, this vegetation did not obstruct the view of a train from a passenger in an automobile or a pedestrian using the crossing. The testimony of the witnesses and the photo-

graphs and other exhibits appearing in this record conclusively established that this particular grade crossing was not made extrahazardous by the vegetation. Therefore, there is no basis for this contention.

■ The speed of the train at this crossing did not constitute negligence. The rule in respect to speed of trains at crossings in the open country is different from that at crossings in cities. It is a well established rule in this jurisdiction that a railroad is not guilty of negligence in operating a train over a public crossing in open country at a high rate of speed. Louisville & N. R. Co. v. Elzey, 302 Ky. 407, 194 S.W.2d 962; Louisville & N. R. Co. v. Molloy's Adm'x, 122 Ky. 219, 91 S.W. 685.

Judgment affirmed.

STEWART and HOGG, JJ., dissent.

HOGG, Judge (dissenting).

I think the majority opinion in this case constitutes an unwarranted encroachment upon the well-established province of the jury, and I respectfully dissent.

The plaintiff undertook to prove negligence on the part of the defendant by showing that there was a failure to give the statutory warnings required at railroad crossings, namely: blowing the whistle or ringing the bell. Three witnesses were produced. The first was the plaintiff, a sister of the two deceased men and a beneficiary of any amount that would be recovered. She stated that she saw the train when it was more than 800 feet from the crossing; that she continued to view its approach to the crossing and that neither the bell nor the whistle was sounded at any time. It is admitted that she was in a position where she could have heard these signals. The other two witnesses, disinterested and not parties, testified that they observed the train as it approached the crossing and they did not hear any signals given.

At this point, there could be no doubt but that plaintiff had presented sufficient evidence of probative value to withstand a motion for a peremptory. No one would go so far as to say that reasonable men, properly weighing this evidence, could only reach the conclusion that the statutory signals had been given.

The defendant then introduced about a dozen witnesses, included in this number being the engineer, fireman, and the father of the plaintiff and the two deceased men, all of whom stated positively that the whistle was sounded and the bell was rung. Through some process that I am unable to comprehend, the majority opinion finds that the defendant's evidence has the effect of decreasing, overcoming, or destroying the probative value of the plaintiff's evidence to the extent of sustaining the lower court in directing a verdict for the defendant.

The decision that the defendant was entitled to a directed verdict can be sustained only if, from a consideration of all the evidence, reasonable men could only conclude that the statutory signals were given. My own consideration of the evidence convinces me that this conclusion would not be warranted.

There is no difference in the quality of the proof presented by each party; essentially, it is what each witness perceived with respect to the sounding of the whistle and the ringing of the bell. There is no proof that the witnesses for the plaintiff were in a less advantageous position to hear these signals, nor are there any "physical facts" in this case. In my opinion, what one, ten, or twenty witnesses say they heard cannot destroy the positive testimony of one witness that neither the whistle nor bell was sounded; it only contradicts, and it does not contradict any more directly when vouched for by a number of witnesses, unless we are to lay down the arbitrary rule that contradictions are to be resolved by counting witnesses. Being only a contradiction, it becomes necessary to decide which witnesses will be believed, but whether contradicted by one, ten, or twenty, the determination of which contradictory evidence is to be accepted should be left to the jury. Like-

wise, the fact that the plaintiff is an interested party does not render her testimony of no probative value but goes to her credibility, a matter that has always been regarded as being within the province of the jury. I believe that where the facts are in dispute, and the evidence in relation to them is that from which fair-minded men may draw different conclusions, a jury question is presented.

I am at a loss to understand how I could subscribe to the majority opinion without usurping the jury's function of determining which of the contradictory evidence I would believe from the reading of a cold and lifeless record. I have enough difficulty with the quantity and quality of the purely legal questions presented.

The holding in the case of Fryrear v. Kentucky & I. Terminal R. Co., relied upon in the majority opinion, was a complete departure from what had been the settled law in this state for a century. In deciding if there was sufficient evidence in favor of the plaintiff to authorize submitting the case to the jury, the court said that because the plaintiff was an interested party, her testimony, together with that of two other witnesses, did not authorize the submission of the case to the jury. Whether or not a person is an interested witness is taken into account in determining the credibility of the witness. As far as can be determined, never before had the question of the credibility of a witness been assumed by a judge instead of a jury to decide a jury case. To follow that case as authority is compounding error. It should immediately be overruled.

Believing that a jury question was presented, and believing that a verdict for appellant under the evidence would not have been flagrantly or palpably against the evidence, I disagree with the majority opinion. The majority opinion departs from the well-established law of this state that verdicts of juries will not be set aside upon the ground that the evidence is insufficient to sustain the verdicts, unless such verdicts are flagrantly or palpably against the evidence. While I do not approve of such a

departure, nevertheless I would say that the evidence in this case would be sufficient to sustain a verdict for appellant, notwithstanding such departure.

STEWART, J., joins me in this dissent.