Claude BLANKENSHIP, Appellant,

v.

LLOYD BLANKENSHIP COAL CO., Inc.,
et al., Appellees.

Court of Appeals of Kentucky.

Dec. 11, 1970.

Rehearing Denied Feb. 19, 1971.

Ronald W. May, Pikeville, for appellant.

J. W. Craft, Jr., Hazard, Thomas R. Emerson, Dept. of Labor, J. Keller Whitaker, Frankfort, for appellees.

PALMORE, Judge.

Claude Blankenship appeals from a judgment sustaining a dismissal of his compensation claim by the Workmen's Compensation Board. We affirm.

After many years of employment as an underground coal miner the claimant quit working in July of 1967. He was then 56 years old and for some time had been suffering chest pains and shortness of breath which, he said, finally made him unable to work any longer. A Dr. Cox examined him in August of 1967, told him his "lungs were full" and advised him to rest. A year later, in August of 1968, he was examined by Dr. W. C. Hambley, a general surgeon of Pikeville, Kentucky, who concluded that he had "early second stage silical anthrocosilicosis" which had developed over the course of his entire underground coal mining experience.

On the basis of chest X rays Dr. Hambley testified that he found "a marked increase in his hilar densities with radial linear fibrosis radiating into the peripheral lung fields; there was scattered throughout both lung fields fine discreet [sic] nodulation with large or soft associated nodules; there was a minimal, a very minimal focal

emphysema present, limited mainly to the lower lobes. I interpreted this nodulation as representing an early second stage silical anthrocosilicosis, the fine nodulation being that of silicosis, and the larger soft nodules as anthrocotic nodules." He said also that "the linear fibrosis is the disabling part of the disease. The nodular disease is not the disabling component; it's only an identification component."

The only expert testimony given in support of the claim was that of Dr. Hambley, and the only countervailing evidence was given by Dr. William H. Anderson and Dr. E. R. Gernert, both chest specialists, of Louisville, Kentucky, in behalf of the Special Fund. Cf. KRS 342.120.

Drs. Anderson and Gernert used stereoscopic X-ray films of the chest taken under the direction of Dr. Anderson, a full-time faculty member of the University of Louisville School of Medicine whose primary field of teaching is diseases of the chest and clinical pulmonary physiology. Dr. Anderson interpreted these films as revealing "peleural [sic] thickening on the right, mild increase in bronchovascular markings but specifically no evidence of nodulation to indicate pneumoconiosis." He diagnosed the claimant's condition as chronic bronchitis with mild obstructive ventilatory defect "and mild decrease in arterial PO2" and a suspected arteriosclerotic heart disease "because of paroxysmal nocturnal dyspnea and intermittent ankle edema." Dr. Anderson did not agree with Dr. Hambley's opinion to the effect that linear fibrosis is the disabling aspect of silicosis whereas the nodulation is of importance mainly as an identification factor. He said further that bronchitis is the most frequent chronic pulmonary disease found in the general population.

Dr. Gernert drew the following conclusions from the X rays: "Heart and vessels are normal. Left lung, root normal with few calcified areas in same. Normal blood vessel shadows to zone three. Diaphragm normal. Phrenic angles clear. Right lung, essentially same as left lung. * * * Note: No nodulation of pneumoconiosis.

Conclusions: Negative for pneumoconiosis and/or silicosis."

Dr. Gernert did not see the claimant, his examination being confined to the X-ray films. He testified that he did not observe any pleural thickening or any increase in the bronchovascular markings, and on the basis of this notable inconsistency between his testimony and that of Dr. Anderson the claimant contends that neither can provide a reliable basis for the board's refusal to accept Dr. Hambley's opinion as conclusive.

Under the heading, "Findings of Fact," the final order of the Board states, "Although there is medical disagreement as to the nature of plaintiff's disability, the persuasive medical testimony of record establishes that plaintiff's disability is not occasioned by a compensable, industrial disease." Under the heading, "Rulings of Law," it states the following: "The plaintiff has failed in the burden of persuasion of a compensable, industrial claim."

Although the first of these statements is couched in terms of a direct and categorical finding that the claimant is *not* suffering from a compensable disease, the second statement indicates that the board simply was not convinced that he *was*. Since the claimant had the burden of proof in this respect it was not necessary for the board to determine whether he was or was not unless, upon the evidence as a whole, it would have been clearly unreasonable for it not to be convinced that he was. Lee v. International Harvester Company, Ky., 373 S.W.2d 418, 420 (1963). The point is of significance here because the claimant contends he is the victim of a misapplication or misconstruction of the "substantial evidence" rule.

Until 1964 KRS 342.285(3) (d) provided that in its review of an award or order of the board the circuit court, if findings of fact were in issue, was limited to determining "whether such findings of fact support the order, decision or award." Under this statute the findings of the board were treated as conclusive if they were supported by substantial evidence. See, for example, Savage v. Claussner Hosiery Com-

pany, Ky., 379 S.W.2d 473, 474 (1964). In 1964 the statutory language was changed (c. 192, § 22, Acts of 1964) to say that the court shall not substitute its judgment for that of the board as to the weight of the evidence on questions of fact and shall limit its review to determining whether the order, decision or award "is clearly erroneous on the basis of the reliable, probative, and material evidence *contained in the whole record*," etc. (Our emphasis.) This change, it is contended, meant that the courts may no longer look merely to see if the action of the board is supported by some isolated piece of evidence which, standing alone, would be sufficient, but must weigh such evidence and determine whether it is substantial in the light of all the evidence in the record.

We frankly confess that we do not know precisely what the legislature had in mind in enacting the 1964 amendment unless it was to bring the statutory language into conformity with what it had been construed by this court to mean, plus a renewed and more explicit admonition against that unconscious but stubborn tendency of all human beings, including judges, to accord too much rein to their own judgment of the facts. But it makes no difference, nor is it necessary to undertake an analysis of what the substantial evidence rule really meant before 1964, because we are of the opinion that it means today just what the claimant in this case says it ought to mean. Our only point of difference is that we cannot see how it helps him here.

■ "The principle of 'substantial evidence,' * * * applies to the party having the burden of proof. To hold that a defendant must produce 'substantial evidence' in a case where the plaintiff's evidence, standing uncontradicted and unexplained, would entitle him to a directed verdict, would in effect shift the burden of proof * * *. As pointed out in Lee v. Tucker, [365 S.W.2d 849, 852 (1963)], the burden never shifts. When, after *the proof is all in*, the plaintiff demands a directed verdict, the question becomes, 'Could a reasonable man remain unconvinced?' " (Emphasis added.) Scott

v. Patterson, Ky., 400 S.W.2d 526, 531 (1966). The test of whether evidence is "substantial" is "whether taken alone *or in the light of all the evidence*" (emphasis added) it has sufficient probative value to induce conviction in the minds of reasonable men. Wadkins' Adm'x v. Chesapeake & O. Ry. Co., Ky., 298 S.W.2d 7, 10 (1957).

■ The claimant's argument here apparently proceeds from the same misconception we discussed in Lee v. International Harvester Co., Ky., 373 S.W.2d 418, 419–420 (1963). It is not necessary for a party who does not have the burden of proof to produce "substantial evidence" in order for a decision in his favor to stand. If the evidence against him is strong enough to require an unfavorable decision against him unless rebutted, he need only inject enough doubt that it cannot be held unreasonable for the fact-finding body to remain unconvinced by his adversary's evidence. Cf. Hunter v. Turner Elkhorn Mining Co., Ky., 455 S.W.2d 571, 572 (1970); Porter v. Goad, Ky., 404 S.W.2d 795 (1966); D. H. Overmyer Company v. Hirsch Bros. & Company, Inc., Ky., 459 S.W.2d 598 (1970). Stated another way, if the whole evidence is such that the fact-finder cannot be compelled as a matter of law to find one way or the other, and in fact is unable to find one way or the other, the party with the burden of proof loses.

■ The claimant's exasperation at the spectacle of one great and distinguished physician unable to find what another has no difficulty in observing in the same X-ray films is quite understandable. This court has become inured to it through frequent exposure to the same phenomenon. We cannot concede, however, his argument to the apparent effect that it cancels out both, leaving Dr. Hambley's testimony in complete dominion of the field. It is our opinion that even though Drs. Anderson and Gernert differ, the testimony of either is enough to warrant the board's inability to accept Dr. Hambley's judgment.

The judgment is affirmed.

All concur.