Ronald J. GOLDEN, Appellant,

v.

ANACONDA WIRE & CABLE COMPANY, the Travelers Insurance Company, Workmen's Compensation Board of Kentucky and James R. Yocom, Commissioner of Labor and Custodian of the Special Fund, Appellees.

Court of Appeals of Kentucky.

July 15, 1977.

Discretionary Review Denied
Oct. 24, 1977.

Joseph Davis, Louisville, for appellant.

S. Lloyd Cardwell, Gemma M. Harding, Dept. of Labor, Louisville, Kenneth E. Hollis, Gen. Counsel, Dept. of Labor, Frankfort, for appellees.

Before HOWERTON, REYNOLDS and WILHOIT, JJ.

HOWERTON, Judge.

The central issue on this appeal is whether or not the circuit court committed error in reversing the finding of the Workmen's Compensation Board that the appellant had a 50% permanent partial disability. Several other issues are presented by the appellant, the appellee employer, and the Special Fund; but, since we affirm the trial court, the remaining questions are moot.

Golden began working for Anaconda Wire & Cable Co. on August 28, 1971. In February 1972, Golden began working in a department where strong chemical fumes were present. Approximately six months later, the appellant developed a persistent cough and experienced a shortness of breath. He periodically missed work and received treatment for his condition and allergy. On December 17, 1973, he was transferred to the area where he originally worked and which had fewer noxious fumes. He finally quit his employment on June 21, 1974. Golden's compensation claim was filed July 2, 1974.

The Board awarded the appellant medical expenses, total temporary disability and 50% permanent partial disability, and directed that the employer pay 25% and the Special Fund pay 75% of the award for permanent disability. The circuit court found that there was no substantial evidence to support the finding of any permanent partial disability and struck that portion of the award.

Before addressing the specific question of error, it would be beneficial to summarize briefly the duty of courts and the scope of their judicial review in a workmen's compensation case.

The statutory scope of judicial review in the circuit court is set forth in KRS 342.-285(3), as follows:

(3) No new or additional evidence may be introduced in the circuit court except as to the fraud or misconduct of some person engaged in the administration of this chapter and affecting the order, ruling or award, but the court shall otherwise hear the cause upon the record as certified by the board and shall dispose of the cause in summary manner. The court shall not substitute its judgment for that of the board as to the weight of evidence on questions of fact, its review being limited to determining whether or not:

.    .    .    .    .

(d) The order, decision, or award is clearly erroneous on the basis of the reliable, probative, and material evidence contained in the whole record    .    .    . .

The portion quoted pertains to facts only and not to interpretations of the law. The provision relates to the required quality and sufficiency of the evidence to support an award. The court is prohibited from substituting its judgment for that of the Board as to the weight of the evidence on questions of fact, which is basically the same rule that applies to the findings of a jury in a civil case. *Lee v. International Harvester Company*, Ky., 373 S.W.2d 418 (1963). Jury cases require "more than a scintilla" of evidence and workmen's compensation cases are governed by the "substantial evidence" rule to determine whether or not a finding is "clearly erroneous". In comparing the two evidentiary rules, the court provided in

*Blankenship v. Lloyd Blankenship Coal Co.,* Ky., 463 S.W.2d 62, at p. 64 (1971):

. . . The test of whether evidence is "substantial" is "whether taken alone or in the light of all the evidence it has sufficient probative value to induce conviction in the minds of reasonable men." (Citing, *Wadkins' Adm'x v. C & O Ry. Co.,* Ky., 298 S.W.2d 7 (1957) ).

The court provided further in *Wadkins' Adm'x, supra,* at p. 9:

It is possible that initially sufficient evidence at the close of the plaintiff's case may lose every vestige of its persuasive character in the light of the defendant's evidence. Thus, what was once more than a scintilla may, upon ultimate analysis, be no longer that sufficient quantum of proof required to present a true issue of fact to the jury.

■ The Board, as a fact finder, like a jury, is supreme within its own area to pass upon the weight of the evidence when substantial evidence is before it, but the court is the final authority as to what constitutes "substantial evidence" as it applies the judicial test of quality, sufficiency and fitness of the evidence as a whole "to induce conviction in the minds of reasonable men."

Courts have a duty to make the ultimate decision as to whether the Board's findings are supported by "substantial evidence". The test to be applied is well stated in the opinion in *Smyzer v. B. F. Goodrich Chemical Company,* Ky., 474 S.W.2d 367, pp. 368–369 (1971):

. . . Although the circuit court held that the board's findings had no support in the record and were clearly erroneous "on the basis of the reliable, probative and material evidence contained in the whole record," we think the issue is better stated by the simple inquiry: "Were the findings of fact made by the board supported by substantial evidence?"

. . . . .

Although a court cannot substitute its evaluation of the weight and credibility of the evidence for that of the Workmen's Compensation Board, nevertheless, the findings of fact of the board when it decides in favor of the claimant must be supported by substantial evidence. Substantial evidence means evidence of substance and relevant consequence having the fitness to induce conviction in the minds of reasonable men. See *O'Nan v. Ecklar Moore Express, Inc.,* Ky., 339 S.W.2d 466.

■ We have reviewed the evidence as a whole and conclude that the trial court made the correct interpretation of the evidence when it determined:

The court finds that the only reasonable inferences from the evidence as a whole are:

(A) Golden had certain basic allergies.

(B) The allergies made Golden more sensitive and unable to tolerate certain fumes in the employer's plant.

(C) Respondent, Golden, is entitled to compensation for two separate periods of temporary total disability, as found by the Board.

(D) He has no increased permanent impairment for other work.

The evidence pertaining to claimant's medical condition and disability was obtained from the testimony of three doctors. Dr. White testified, "Yes, to a degree, although it's very questionable in my mind whether he would be disabled at all if he were in a place of employment where he did not have to breathe irritants." Dr. Anderson testified:

While his industrial exposure appears to have caused some irritation of his upper airways, it has not caused any permanent impairment and certainly his industrial exposure did not cause the allergy to the materials that Dr. White has determined he is allergic to, and for which he is receiving treatment. So that, at the present time, Mr. Golden has no permanent impairment and the only disability he would have would be for working back in the same environment in which he worked for Anaconda. This would be contraindicated. He has no disability or difficulty working in other situations as is well demonstrated by the fact he is now working.

Dr. Davis indicated that he believed Golden had some permanent damage to his bronchial tree by having had repeated respiratory infections for a period of time, but he gave no information as to a degree of permanent impairment or its effect on his disability.

The only evidence in the record pertaining to a 50% permanent partial disability was presented by Dr. White, and the evidence was obviously not for a functional rating at all. The testimony was a non-medical opinion as to probable employment opportunities. Dr. White testified as follows:

> The 50% figure is based upon my feeling that this sensitivity, there again for lack of a better word, to irritants, limits him in what he can do. He, obviously, is a man with limited education. (Board record, p. 150)

> It would appear to me that he is most likely to find employment in industry, with my knowledge of industry in the Louisville area, his chances of finding a job where he will not be exposed to the irritants is rather limited, and the 50% figure is one that I *arbitrarily* arrived at, considering all of these factors. (Emphasis added.) (Board record, p. 151)

It should be noted that this is an allergic reaction case. Such conditions are now recognized as compensable occupational diseases in Kentucky, but they are distinguishable in several respects from injury or other type occupational disease cases. The burden of proof of a permanent impairment is greater, and as was stated in *Princess Manufacturing Co. v. Jarrell*, Ky., 465 S.W.2d 45, at p. 49 (1971):

> Since the employment opportunities of a claimant disabled by a particular allergic reaction may not be limited, except as to one particular job, we feel that such a claimant has a greater burden to affirmatively establish a resulting impairment of capacity to engage in other work generally than one claiming disability from injury.

The trial judge was obviously aware of his scope of judicial review as well as his duty to make a review of the evidence and he properly concluded, as follows:

3. (b) Inasmuch as the respondent, Golden, has no increased impairment for other work, the petitioners, including the Special Fund are not liable to him for compensation for any permanent partial disability at all. Such a finding is contrary to and not supported by the evidence. The Opinion and Award of the Compensation Board as to such finding is clearly erroneous in this respect on the basis of the reliable, material and probative evidence. KRS 342.285(3)(d).

The judgment of the trial court is affirmed.

All concur.