Louisville & N. R. R. Co. v. Bodine.

CASE 75—ACTION FOR PERSONAL INJURIES—DEC. 14.

# Louisville & N. R. R. Co. v. Bodine.

APPEAL FROM LOGAN CIRCUIT COURT.

JUDGMENT FOR PLAINTIFF AND DEFENDANT APPEALS.    AFFIRMED.

RAILROADS—PRIVATE CROSSINGS—FAILURE TO GIVE SIGNALS.

Held:   While, generally, a railroad company is not required to give signals of the approach of trains to private crossings, yet the circumstances may be such as to require it; and where the crossing, which was a dangerous one, had been used for a long time, not only by the adjoining land-owner, but by the public, and it had been customary to give signals of the approach of trains thereto, the failure to give any warning of the approach of a special train at a rapid speed was negligence.

WILBUR F. BROWDER, ATTORNEY FOR APPELLANT.

H. W. BRUCE, EDWARD W. HINES, REUBEN A. MILLER, AND J. C. BROWDER, OF COUNSEL.

1. The peremptory instruction asked by the appellant at the conclusion of the evidence, should have been given by the court, because:

(a) At the time the special train passed the place where the injury occurred, the railroad had the exclusive right of way over its track, and had the further right to run its train at any rate of speed it saw proper.

(b) The appellant was not required to keep a lookout for persons passing over this private passway, and,

(c) The appellee himself was guilty of contributory negligence, to such an extent, that but for his own carelessness he would not have been hurt, or at least his co-operating negligence caused his injury.

2. There is no statute in this State regulating the duty of railroads when approaching a private crossing.

## CASES CITED.

5 R., 138, Eisfelder v. Klein; 6 R., 662, L. & N. R. R. Co. v. Murphy; 12 R., 717, K. C. R. R. Co. v. Martin; 11 R., Carter v. Howard; 14 R., 477, K. & I. B. Co. v. Cecil; 10 R., 871, L.; & N. R. R. Co., v. Hunter;

Louisville & N. R. R. Co. v. Bodine.

91 Ky., 651, Johnson's Admr. v. L. & N. R. R. Co.; Shearman & Redfield on Negligence, p. 25; 12 Bush., 41 Pad. & Mem. R. R. Co. v. Hoehl; 97 Ky., 228, Brown's Admr. v. L. & N. R. R. Co.; Am. & Eng. R., cases (N. S.) 666; L. & N. R. R. Co. v. Vittetoes' Admr.; 19 R., 194, Rosenberry's Admr. v. N. N. & M. V. R. R. Co.; 3 Elliott on Railroads, secs. 1150, 1151; 96 Ky., 197, L. & N. R. R. Co. v. Survant; 92 Ky., 345, Cahill v. L. & N. R. R. Co.; 3 R., 822, Longshaw v. Linning & Jackson; 7 R., 514 Makibben v. White; 4 R., 449, Fisher v. Perkins; 20 S. W. Rep., 654, Maxey v. M. P. R. R. Co.

EDWARD W. HINES, ATTORNEY FOR APPELLANT.

1. The real issue in this case has been obscured by the evidence and the instructions. It is not disputed that the plaintiff could be seen as soon as he placed himself in peril, and the two questions of fact to be determined are: As to where the engine then was, and as to whether it could have been stopped before it struck plaintiff's wagon.

2. Under the evidence the jury should have been told that they must find for the plaintiff if they believed the train could by the exercise of ordinary care have been stopped in time to avoid the injury after the engineer saw that the horses were about to step upon the track.

W. P. SANDIDGE, ATTORNEY FOR APPELLEE.

S. R. CREWDSON OF COUNSEL.

1. It is the duty of those in charge of a railroad train, in approaching a *private* crossing to give signals of the train's approach or to slacken the speed of the train. Hucker v. K. C. R. R. Co., 7 Ky. Law Rep., 761; L. & N. R. R. Co. v. Survant, 96 Ky., 197.

2. A person going on the track at a private crossing is not a trespasser, and the company owes him *some* duty, though not as much as on a public crossing. Cahill v. C. N. O. & T. P. Ry. Co., 13 Ky. Law Rep., 715. It is bound to look out for the presence of persons at an established and recognized private crossing, and to use reasonable caution and vigilance to avoid injuring them.

OPINION OF THE COURT BY JUDGE HOBSON—AFFIRMING.

C. W. Bodine owns a farm in Logan county, through which the line of appellant's road runs. To enable him to get out from his house to the public road, and to get from one part of his land to the other, a private crossing was

Louisville & N. R. R. Co. v. Bodine.

put in by appellant. This appears to have been a part
of the contract for the right of way. Appellant put bal-
last and the necessary timbers on the crossing, and has
maintained it since the road was constructed. Persons
visiting his house use the crossing, and when a lane, at
the end of his farm, was bad, the public passed through
his farm over this crossing, instead of using the lane.
Though it was not a public crossing, it was customary for
appellant's trains to give signals of their approach to it.
The track at the point was straight, running substantially
north and south. To the north of the crossing there was
little difficulty in seeing an approaching train; but to the
south there was a deep cut, and the road on the east side
came up a hill, so that, by reason of the bank, the view
to the south was obstructed until the traveler was within
a few feet of the track. Verner Bodine, the appellee, the
18-year-old son of C. W. Bodine, while passing over this
crossing from east to west, driving a wagon, was
struck by a train, and sustained injuries for which
the jury awarded him damages in the sum of $1,500.
Appellant insisted in the lower court, at the conclusion
of the appellee's evidence, and on all the evidence, that the
court should peremptorily instruct the jury to find for
it. This is the only question necessary to be determined
on this appeal.

Appellee was going after a load of wood. His brother
was with him. About 50 yards from the railroad crossing
there was a gate. The brother opened this gate, and while
they were there they heard a train whistle at the next
station to the north of the crossing. This train was the
local freight, and appellee thought he would have time to
get over the crossing before it would reach him; he and
his brother having stopped at the gate, and looked and

listened. He then drove onto the crossing with his face, watching northward for the freight train they had heard whistle. His brother was walking behind the wagon, and appellee was sitting on the wood frame near the hind axle. Just as the horses reached the track, his brother called to him that a train was coming. Appellee whipped up his horses, but the train struck the hind wheels of the wagon before they cleared the track and threw appellee some 60 feet, inflicting serious injuries. The train which struck him was a special, a pay train, which came up from the south, or in the opposite direction from that in which he was looking, and was running about 30 or 40 miles an hour. No warning of the approach of this train to the crossing was given. There is little conflict in the evidence. The team approached the track not only behind the bank, but also behind the fence which ran down to the cattle guard just south of the crossing. Some experiments made after the accident showed that the horses' heads, about 10 feet from the track, might be seen by the engineer something like 200 yards; but the fence would in a measure obstruct the view, and the engineer could not be expected to see everything along the track at the instant it came in view. By the time that the whole of the horses would be in view, their heads would be substantially on the track. The engineer testifies that this was the time he saw them, and the young man walking behind the wagon saw the train about the same time. It would seem from the testimony that after this all was done that could be done to avert the collision, and, if proper care was exercised by appellant before this, it could not be held responsible. It is apparent that, if warning of the approach of the train had been given, the collision might have been avoided, and, while there is no statute requiring signals at private

crossings, it does not follow that the failure to give notice of the approach of a train to a private crossing will not, under some circumstances, be negligence on the part of the railroad company. This was a crossing constructed by appellant pursuant to the contract under which it acquired its right of way, and appellee, being in its lawful use, was not a trespasser upon the railroad, but a licensee. The crossing was used not only by Bodine and his family, but to a considerable extent by the public, especially when the lane was in bad order. It was a particularly dangerous crossing owing to the fact that the bank shut off all view to the south until a team was practically on the crossing. Appellant's trains for a long time had been in the habit of giving signals of their approach to it. The train in question was a special, running at a very rapid rate, when the freight train going in the opposite direction was due, and danger from the south was not so much to be anticipated. A strong wind was blowing from the north, which prevented the sound of the train from being heard until it was right upon appellee. The question is whether, under these circumstances, timely notice of the approach of this pay train to the crossing should have been given.

In Johnson's Adm'r v. Railroad Co., 91 Ky., 651; (25 S. W., 754), this court said "Generally, the failure on the part of those in charge of a railroad train, when approaching the crossing of a public road, to give such signals as will apprise those at or near the place of its approach, is regarded as negligence; but whether the usual signals are required when the train is approaching the crossing of a private way has not been heretofore directly decided by this court. There not being the same reason for requir-

ing the giving of signals and slackening the speed of rail-
road trains when approaching a private way as exists in
respect to a public road, and as to require it to be done at
every private crossing or opposite every dwelling house
near the road would unnecessarily and seriously interfere
with and impede the running of trains, we think it would
be unreasonable to require it.   In this case it is proved
that it had not been, before the killing of Johnson, the
practice of those in charge of the trains to give any signals
at that place, and of that fact he must be presumed to
have been aware." In Cahill v. Railway Co., 92 Ky., 345;
(18 S. W., 2), the same question was presented, and the
court, after stating the rule applicable to public crossings,
said: "It has, however, been held that the same reason
does not exist for giving signals and slackening usual speed
of a train at a private crossing, and failure in that regard
is not generally regarded negligence. . . . Although
it may be regarded an unreasonable hindrance of regular
and prompt movement of trains running on schedule time
to require their speed slackened and signals given at every
private crossing, however little used, it does not follow
a railroad company is exempted from any reasonable duty
to persons who lawfully go on its track at such place.
On the contrary, it is bound to look out for the presence
of persons at an established and recognized crossing, and
use reasonable precaution and vigilance to avoid injuring
them." In this case the company was held liable for fail-
ure to give a signal of the train's approach to a public
crossing a short distance from the private crossing, it ap-
pearing that it was customary for these signals to be given
and that they were relied on by persons using the private
crossing.   The doctrine of this case was recognized in Rail-
road Co. v. Survant (Ky.), (44 S. W., 88).   While none of

these cases presented the precise point involved here, they all seem to recognize the rule of law applicable when the rights of the parties are mutual. In 2 Wood, R. R., section 344, it is said: "In an action against a railroad company for the death of plaintiff's intestate, who was killed by the defendant's train at a private crossing, instructions to the jury that, although there was no statutory obligation which required the railroad company to ring a bell when approaching a private crossing, the jury might find it was negligence to omit to do this when running at a high rate of speed, at a time when the view of the train was so obstructed by cars on the side-track as to render the use of the crossing peculiarly hazardous; that a railroad company ordinarily has the right to run its trains at any rate of speed it thinks proper, but that the condition of the crossing might impose some restrictions upon this right, and under the circumstances the jury might predicate negligence upon excessive speed; that one using such crossing must use all his faculties to ascertain whether or not he could do so safely; that one has the right to assume that the company would use more than ordinary care in approaching a crossing so obstructed—were held to be unexceptionable." In Czech v. Railway Co., (70 N. W., 791), 38 L. R. A., 302, the Minnesota Supreme Court, in a case very much like this, after showing that the statute regulating signals at public crossings did not apply, said: "But it does not necessarily follow from this that a railroad company may never, under any circumstances, owe a duty to the adjacent landowner to give a signal or warning of an approaching train. It merely leaves the question to be determined on common-law principles whether, under the circumstances of the case, reasonable care would have required the giving of such warning. It may be conceded

that, as a general rule, and under ordinary circumstances, a railway company owes no duty to the adjacent landowner to give him a warning signal, or to slacken the speed of its trains on approaching a private crossing. The necessities of public travel and of the railway company would not permit of this; and when such a crossing is put in for the convenience of an adjacent landowner, although he has, of course, a legal right to its reasonable use, he must take it subject to the risk or burden incident to this condition of things. But reasonable care means the degree of care commensurate and corresponding with the situation. While in certain respects the rights of the adjacent landowner to use the crossing must, from the necessities of the case, be subordinate to the rights of the railroad company to use its road, yet the rights and duties of each are correlative and reciprocal; and in exercising its or his right, each must bear in mind the right of the other to use it also, and use reasonable care to avoid injury to such other while in the exercise of such right. Therefore, while there is no statutory obligation on a railroad company to give a signal of the approach of a train to a private crossing yet the condition of the crossing as a peculiarly hazardous one, for any reason, coupled with the high rate of speed at which a train is running, may render the case one where reasonable care would require that some warning signal should be given. Thomas v. Railroad Co. (C. C.), 8 Fed., 729." So, in Railway Co. v. Boozer, 70 Tex., 536; (8 S. W., 121), the court said: "Although it might not be the statutory duty of a railway company at such a place to give the signals of an approaching train as is required at public crossings, yet the failure to do so might be negligence. . . . The degree of care that should be used must be proportioned to the nature of

Louisville & N. R. R. Co. v. Bodine.

the act performed, the place where performed, and the extent of danger and injury likely to result from a failure to use due care in avoidance of injury to others." And in Swift v. Railroad Co., 123 N. Y., 649; (25 N. E., 379), the court of appeals of New York said: "Although in such cases the company is not absolutely bound to ring a bell or blow a whistle upon the locomotive of a train approaching such a crossing, yet it is bound to give some notice and warning, and as to what is sufficient in this regard is a question for the jury. Where a train is approaching a crossing of this character, the fact that the bell was rung does not, as matter of law, establish the fact that the company used reasonable care, but it is for the jury to determine whether any other precaution should have been taken by those in charge of the train." In this case, in view of the dangerous character of the crossing. its long use, not only by Bodine, but by the public, the fact that signals were accustomed to be given by trains as they approached it, the speed of this train, and the fact that it was a special, imposed upon appellant the obligation to give such warning of its approach to this crossing as exigencies of the situation demanded for the protection of human life. And, as no warning at all was given, we think the jury were warranted in concluding that proper precaution was not exercised by appellant, and that by reason of this the accident occurred. The question of contributory negligence was fairly submitted to the jury. The instructions of the court were more favorable to appellant than it was entitled to, and, on the whole case. the verdict not being excessive, we see no reason for disturbing the judgment of the court below. Judgment affirmed.