## LOUISVILLE & NASHVILLE RAILROAD COMPANY et al., Appellants,

### v.

## Madge L. QUISENBERRY, Administratrix of the Estate of William R. Quisenberry, Appellee.

Court of Appeals of Kentucky.

March 4, 1960.

Rehearing Denied Oct. 14, 1960.

Denney & Landrum, Lexington, J. Smith Hays, Jr., Winchester, J. M. Terry, Louisville, for appellants.

White & McCann, Winchester, for appellee.

MOREMEN, Judge.

William R. Quisenberry was fatally injured when a diesel locomotive pulling three cars and a caboose struck the automobile which he was driving across appellant's double railroad track crossing on the farm of David Johnson. Appellee, Madge L. Quisenberry, administratrix, obtained judgment against appellants, Louisville &

Nashville Railroad Company and E. T. Sanders, engineer, in the sum of $35,000 for the death of her husband, and from that judgment this appeal is taken.

David Johnson is the owner of a farm located about seven miles south of Winchester. It lies on both sides of appellant railroad company's double track. Johnson's predecessor in title had granted a right-of-way across the farm and the company had agreed to "make a convenient passway for stock and travel over or under said railroad." It was by this privilege a crossing had been constructed. The tracks across the farm are approximately in a north-south line and the residence of Johnson is located on the west side of the tracks. A rather primitive road leads from the residence to the crossing and immediately beyond the crossing the road sharply angles to the northeast so that for a short distance, the road almost parallels the tracks. This portion lies on a sharp downgrade (approximately thirty degrees) to a farm gate, and the gate evidently opens on a public highway although this is not too clear from the record. Immediately west of the gate is a parking area where at times Johnson parks his car and walks back from there to his residence.

The railroad tracks which bisect this road, run, as we have indicated, from north to south. The southbound track is on the west side of the road's right-of-way and the northbound track is on the east side. About 300 feet north of the crossing is a sharp curve in the track and on the west, or concave side of the curve, is a bluff or cut which obscures the vision of an operator proceeding south. There is some testimony to the effect that a person approaching within 34 feet of the crossing would be able to see the track for about 500 feet north of the crossing, but when getting closer, he could see only 300 feet in that direction. It is not explained why this is so and we surmise that at the former point one might be able to see behind the bluff and further up the track. To the

south of the crossing in the direction the automobile was carried is a stretch of relatively straight track. This too ends in a curve.

At about 11 o'clock a. m. on December 28, 1956, a cold and foggy day, decedent, Quisenberry, who was an employee of a tobacco warehouse in Winchester, entered the outer gate on Johnson's farm and proceeded up the steep hill to the crossing. At the same time the train was approaching from the north. The grade of the railroad roadbed is down hill and the train was coasting, with the power shut off. The bell was ringing, but the diesel's horn was not sounding. When the engine was 300 feet away from the crossing the engineer saw decedent drive his automobile on the northbound track. He immediately sounded the horn and applied the brakes. He estimated that the train moved about 40 to 50 feet from the place he first saw decedent's car to the point where the brakes were applied. The automobile was struck near the middle and was carried 1100 feet down the track.

The trial court submitted the case to the jury upon the theory that if they found the crossing, due to its location and surroundings, to be unusually dangerous to travelers and that the ringing of the bell was not sufficient to give notice of the approach of the train, it was the duty of appellant, in the exercise of ordinarily prudent judgment, to use other means to prevent injuries to travelers; in other words, under the instructions, the jury might reasonably find that the railroad company was negligent in not sounding a horn or whistle when approaching this crossing.

Appellants insist that the trial court should have directed a verdict in their favor because under the facts shown there was no duty to give decedent warning of the approach of the train and, further, that decedent was contributorily negligent as a matter of law.

The testimony and exhibits disclose that this was a highly dangerous crossing and

was so constructed that neither the engineer nor the decedent had enough time to do anything to prevent the accident after they came within view of each other.

Our question concerns whether under such circumstances, and when visual aids are unavailable, it is proper to submit to the jury the question of whether the engineer should have warned of the train's approach to this crossing by proper signals.

It is true we have held in a number of cases that a railroad's duty at a private crossing is not as great as that at a public crossing. Louisville & Nashville R. Co. v. Wallace, Ky., 302 S.W.2d 561; Stull's Adm'x v. Kentucky Traction & Terminal Co., 172 Ky. 650, 189 S.W. 721; Hunt's Adm'r v. Chesapeake & O. Ry. Co., Ky., 254 S.W.2d 705, and cases cited therein.

■ However, there is a well recognized exception to the general rule where there exist peculiar or extraordinary circumstances surrounding a crossing and the facts are known to trainmen. In such cases reasonable care may require that an alarm or signal be given by the approaching train and the question of whether circumstances are such that require a signal is for the jury to determine. The exception was well stated in Louisville & Nashville R. Co. v. Bodine, 109 Ky. 509, 59 S.W. 740, 742, 56 L.R.A. 506, where it was held that while generally a railroad company is not required to give a signal of the approach of a train at a private crossing, yet the circumstances may be such as to require it. In the Bodine case the crossing had been used for a long time by the landowner and, at times, by the public generally, and it was shown that customarily a signal was given by approaching trains. It was there held that the failure to give warning of the approach was negligent.

The court said:

"In this case, in view of the dangerous character of the crossing, its long use, not only by Bodine but by the public, the fact that signals were accustomed to be given by trains as they approached it, the speed of this train, and the fact that it was a special, imposed upon appellant the obligation to give such warning of its approach to this crossing as exigencies of the situation demanded for the protection of human life. And, as no warning at all was given, we think the jury were warranted in concluding that proper precaution was not exercised by appellant, and that by reason of this the accident occurred. The question of contributory negligence was fairly submitted to the jury."

■ The facts in the instant case differ somewhat from the Bodine case in that the crossing seems to have been used less often than that in the Bodine case; and here too it was not shown that the train approached the crossing at an excessive rate of speed. Here the train was coasting, and this fact seems to us to have lessened the audible sounds which might have been created by it if it were going at a faster rate of speed. The engineer here testified that he never sounded his signal for this crossing, and he did not on this fatal occasion. It was sufficienly proved, however, that trains sounded alarms at this dangerous place about fifty per cent of the time. We are of opinion that the case was properly submitted to the jury.

■ We find no merit in appellants' contention that decedent was guilty of contributory negligence as a matter of law. It is true we have often held that one must use his eyes and ears, at least to the extent that an ordinarily prudent person should do in such a situation and must see those things which should be seen. Louisville & Nashville R. Co. v. Wallace, Ky., 302 S.W. 2d 561, and many cases cited therein. An examination of those cases will disclose that the facts were such that if the injured party had in fact used his sensory perceptions properly he would have been aware of the approach of the train. In most of the cases every witness, except the injured

person, was aware of the train's approach. We do not have that situation here. It was impossible to see the train in time to avert the tragedy and even if decedent had used to the fullest extent his auditory faculties it is doubtful whether, under these circumstances, he could have heard the train approach, particularly since no signal was sounded.

We find nothing in the record that indicates decedent was not exercising his full faculties when he entered upon the crossing at the time the train came around the curve.

Finally appellants object to the instructions given. This argument is predicated upon the idea that railroad operators are never required to give warnings of the approach of one of their trains at private crossings. We believe this argument has been answered by the above discussion.

We find no prejudicial error in the record and the judgment is affirmed.