Oval Lee WRIGHT, Administratrix of
Estate of Jesse Edward Wright,
Deceased, Appellant,

v.

ILLINOIS CENTRAL GULF RAILROAD
CO., a corp., et al., Appellees.

Supreme Court of Kentucky.

Feb. 18, 1977.

Rehearing Denied June 10, 1977.

Charles B. West, Henderson, for appellant.

Alfred C. Ross, Greenville, for appellees.

JONES, Justice.

This is a railroad crossing case. A tractor trailer driven by Jesse Wright collided with a coal car of Illinois Central Gulf Railroad Corporation as its freight train was moving slowly over a crossing at the intersection of U.S. Highway 231 and the railroad's siding

known as 20th Century Spur. Jesse Wright was killed. Oval Wright, his wife and administratrix, sued the railroad seeking damages for the wrongful death of her husband.

The trial court directed a verdict for the railroad company. On appeal, Oval contends it was error to direct a verdict against her.

█ The principal issues are whether the railroad company and its agents were negligent, or whether Wright was contributorily negligent as a matter of law. If the railroad company was free of negligence, Oval was not entitled to recover. If Wright was contributorily negligent as a matter of law, Oval was likewise not entitled to recover.

The accident happened about 11:00 p.m. on a dark June night in 1967 at a crossing over U.S. Highway No. 231 near the southern limits of Beaver Dam in Ohio County. Wright was a truck driver employed by Farmers Tankage Truck Company. On the night of the accident, he was driving a tractor trailer from Bowling Green, Kentucky to Henderson, Kentucky. Part of his route was U.S. Highway No. 231. His usual run was from Henderson, Kentucky to Nashville, Tennessee. On the night of the accident he was taking the place of another driver who was sick. He had done so the previous night. The overall length of the tractor trailer was 44 feet. The trailer was loaded with chicken parts. The gross vehicle weight (including load) was 60,000 to 64,000 pounds. The tractor was in good condition. It had been "rehauled and rebuilt" a short time before the accident. The lights were in "A–1 shape" and the brakes "new."

Wright was traveling in a westerly direction. As he approached the crossing, the train was backing slowly on the 20th Century Spur siding. The engine was pushing 33 empty coal hoppers in a southerly direction on the siding which was perpendicular to U.S. Highway 231. Wright ran the tractor trailer "head on" into the side of the moving train. The tractor trailer crashed into the coal cars with such tremendous force as to cause three of them to derail. One of

them was lying on top of the truck. The truck was so demolished that only parts of it could be recovered. Wright was killed instantly.

The only person in a position to see the accident was Richard Wallace. He was sitting in his automobile about "five to six" city blocks from the crossing. He saw the train crew flag and pass over the crossing. He heard the roar of the tractor trailer from some distance back. He described what he observed as follows:

"Q 1. Mr. Wallace what first attracted your attention to this wreck?

A. Well, the first thing that attracted my attention to it was I heard the truck rumbling down the road, and I knowed just exactly about where he was on the road . . . and when he come up over the raise approaching the crossing, I just made the remark through my head, Buddy, you better be slowing up for there is a train across the crossing down there.

Q 21. Now go on and tell the jury what happened then?

A. Well, as I said before, it was one of the clearest nights, I believe I ever witnessed, there wasn't a sound, no way. Not a sound— only from the truck—from the exhaust on the truck and a kind of rumbling from the train cars, traveling slow and not much noise coming from them, but I could hear it, and then the next noise was when the truck hit the train and there was a great commotion there."

There is no evidence to indicate the speed of the tractor trailer. A state trooper testified that he observed skid marks of 33 feet. Those marks were 112 feet from the railroad track. The trooper could not tell whether the tractor trailer caused the skidmarks.

The evidence shows that in daylight the rail crossing can be seen by a traveler from

the top of the hill on this two-lane, 24-feet-wide highway 1,050 feet. Three photographs taken in the day time show the crossing from 120 feet, 400 feet, and 800 feet. The speed limit on the highway is 50 miles per hour at night and 60 miles per hour in the day. On the night of the accident there were two railroad cross bucks marking the crossing. One was on the left side of the highway facing Wright as he approached the crossing. The one on the other side of the tracks was demolished by the derailment of the coal cars.

The train crew testified that a fusee had been lit on the opposite side of the crossing from which Wright approached. It was admitted that no fusee was lit and thrown on the side from which Wright approached the crossing.

Oval Lee Wright recognizes that this court in a long line of cases has held that the mere presence of railroad cars passing over a highway crossing is notice enough to the traveling public of rail cars obstructing the highway. She also recognizes this court has held such a situation negates any duty upon the railroad company to give additional warnings.

However, counsel for Oval makes a forceful argument that black coal cars on a dark night traversing a crossing creates an extra-hazardous situation.

Oval introduced an expert witness with thirteen years' experience as a traffic engineer with the Kentucky Department of Highways. He had made a special study of the properties of light as related to highway traffic at night time. He testified that "if a black object—nearly all of the light that hits a black object is absorbed and if you have a black background—a black object with a black background it would be practically impossible to see anything or make any distinction of an image." The witness prepared, and presented the jury a shadow-box demonstration of the properties of light as he explained them. In his brief, counsel for Oval contends that the shadow-box demonstrates why the unlighted, black coal cars, on a dark night and on the black surface of the road, would be virtually impossible for Wright to see. Thus, it is argued that the railroad company has a duty of giving signals or warnings of the presence of its train on the crossing. It is contended that the rule of law that the presence of railroad cars moving across a highway crossing is adequate notice to the traveling public applies only when circumstances are such that the obstructing rail cars would be plainly visible to motorists exercising ordinary care.

This court is of the opinion that this cannot be classified as an extra-hazardous crossing from a topographical standpoint. An extra-hazardous crossing is one that obscures the view of the traveling public approaching a crossing. This may consist of cuts, embankments, vegetation or other obstacles that obstruct the view of the traveling public in close proximity to the crossing. This court is of the view that moving railroad cars on their tracks, though the cars be black as pitch, and in the darkness of night, do not create an extra-hazardous crossing. The train in such a case is rightfully occupying the crossing. The fact that it is there is sufficient warning to the traveler upon the highway. This court is unable to find in this record "any circumstance by which it may be said that, in the exercise of ordinary prudence and foresight, the operators of the railroad should anticipate that a motorist would collide with the side of the moving train in the ordinary course of events. . . ." *Ward v. Louisville and Nashville Railroad Company*, Ky., 439 S.W.2d 315 (1969); *Gibson v. Louisville and Nashville Railroad Co.*, Ky., 382 S.W.2d 568 (1964). No fair inference of negligence on the part of Illinois Central Gulf Railroad Company can be drawn from its failure to foresee a situation of this sort so as to take precautionary measures to prevent the occurrence. In the absence of a statute imposing an absolute obligation in this respect, a railroad company is not bound to have gates, lights, or other warnings at a crossing in order to prevent such an occurrence unless the circumstances are such that ordinary prudence and foresight would anticipate that it might happen in

the ordinary course of events. See *Ward,* supra.

 The trial court's opinion and judgment was based upon a finding that no negligence on the part of the railroad was shown. The presence of the coal hoppers moving on the crossing was adequate notice as a matter of law. It is therefore unnecessary to consider the issue of Wright's contributory negligence.

There is absolutely no merit in the contention that Wright was a trespasser because U.S. Highway 231 had not been officially opened to the public. The evidence reveals that the public was using the highway. Wright had traveled the same route the previous night.

In view of the foregoing conclusions, the trial court properly directed a verdict in favor of the railroad.

The judgment is affirmed.

All concur.