**CITIZENS STATE BANK, Administrator for the Estate of Patricia Annette Anderson, Appellant,**

v.

**SEABOARD SYSTEM RAILROAD, INC., James F. Higgs, Robert E. Anderson, Jr., Pennsylvania National Insurance Group, Appellees.**

**SEABOARD SYSTEM RAILROAD, INC. and James F. Higgs, Cross–Appellants,**

v.

**CITIZENS STATE BANK, Administrator for the Estate of Patricia Annette Anderson, and Robert E. Anderson, Jr., Cross–Appellees.**

**Robert E. ANDERSON, Jr., Cross–Appellant,**

v.

**CITIZENS STATE BANK, Administrator for the Estate of Patricia Annette Anderson, Seaboard System Railroad, Inc., and James F. Higgs, Cross–Appellees.**

**Nos. 87–CA–2157–MR, 87–CA–2158–MR and 87–CA–2233–MR.**

Court of Appeals of Kentucky.

Feb. 1, 1991.

Stewart B. Elliott, Owensboro, for appellants and cross-appellees Citizens State Bank, Administrator for the Estate of Patricia Annette Anderson.

Stephen B. Lee, Marvin P. Nunley, Owensboro, for appellees and cross-appellants Seaboard System R.R., Inc., and James F. Higgs.

Robert V. Bowers, Jr., Owensboro, for appellee and cross-appellant Robert E. Anderson, Jr., and appellee Pennsylvania Nat. Ins. Group.

Before DYCHE, EMBERTON and MILLER, JJ.

EMBERTON, Judge:

Patricia Anderson was a passenger in an automobile driven by her husband, Robert Anderson, Jr., when it collided with a train causing her death. The couple's daughter, Amber, also a passenger, survived the collision. The Citizens State Bank, Administrator of Patricia's estate, brought suit against Robert Anderson, Jr., against the train's engineer, James F. Higgs, and against Higgs' employer, the owner of the train, Seaboard System Railroad, Inc.[1]

A jury awarded $500,000 plus funeral expenses in the sum of $3,668 for the wrongful death of Patricia, apportioning the liability 50% against Mr. Anderson, and 50% against Seaboard. Following various post-trial motions, a final judgment was rendered which deducted Mr. Anderson's beneficial interest under KRS 411.130(2), viz., $250,000, thereby reducing the award to $250,000, plus funeral expenses and costs. The apportionment scheme of 50/50 liability was left intact.

The case comes to us by way of an appeal by Citizens State Bank and cross-appeals by Seaboard, Higgs and Anderson. Since those issues raised by the cross-appellants are more easily disposed of than those by appellant, they will be confronted first.

The following issues are raised by Seaboard and Higgs:

1) Whether Seaboard was entitled to a directed verdict on the issue of proximate cause;

---

1. Initially the owner of the automobile was a named defendant but was dismissed prior to trial and is not a party to this appeal.

2) Whether it was error to permit an expert to render an opinion as to speed at the time of impact;

3) Whether a witness observed the train for sufficient time to testify as to its speed;

4) Whether it was error to permit an expert to rely on a newspaper article in rendering his opinion; and

5) Whether it was error to instruct the jury of duties imposed on the railroad at an extra hazardous crossing.

Cross-appellee, Anderson, Jr., alleges that:

1) The court erred in overruling his motion for a directed verdict, and

2) The court prejudiced the jury by instructing on his speed and duty of care.

The railroad crossing in question was located in Owensboro, Kentucky at the intersection of Eleventh and Triplett Streets. Triplett, once a two-way street, had been converted to a one-way street southbound. The railroad track, which crossed from east to west, was designated by two double-sided sign posts with flashing red lights. No gates were present, and the warning system had not yet been changed subsequent to the street's conversion to one-way. Located on the northwest corner of the crossing was a large warehouse. An Owensboro ordinance prohibiting trains from traveling over twenty-five miles per hour was in effect at the time of the collision.

The Andersons were traveling south on Triplett when Mr. Anderson observed an armored truck on the right side and moved into the left hand lane. He was apparently distracted by his daughter in the back seat, and as he turned forward, the automobile and train collided. He did not hear the train's horn, nor see the signals. Although familiar with the crossing, he had never been stopped by a train.

The driver of the armored truck testified that he heard the horn, but the warehouse blocked his view of the train until immediately prior to the train's entering the crossing. He estimated its speed at twenty-five miles per hour.

John Costello, an off-duty police officer who was providing security at the ware-house, testified he heard the bell and the whistle of the train, and recalled hearing a screeching of brakes after impact. After observing the train for two to four seconds following impact, he estimated its speed at thirty to thirty-five miles per hour.

David Lee, a consulting engineer called by Citizens Bank, testified that upon impact the train was traveling thirty-five miles per hour. He further testified that the crossing was especially hazardous, and that the warning system was inadequate. His conclusion was based on the location of the warehouse, the signals, and the traffic flow at the crossing, which he obtained from a local newspaper article.

Higgs testified that he sounded his horn prior to his approach at the intersection, and at the time of impact he was traveling twenty-five miles per hour. Following the collision, he applied full service braking, which was customary. Other Seaboard witnesses also testified that the train was traveling twenty-five miles per hour.

Tom Roberts, manager of railway crossing safety improvement for the Kentucky Transportation Cabinet, testified that the warning systems at the crossing were adequate, although it would have been preferable had the south side signal been moved to the north side in order to better warn approaching motorists. He estimated that 9,200 vehicles used the crossing daily.

■ Under the state of the evidence, we affirm the trial court's denial of all directed verdicts. The evidence could support findings that Seaboard, Higgs, and Anderson were negligent and that such negligence was a substantial factor in causing Patricia's death. As such, directed verdicts would not have been properly granted. *Cochran v. Downing*, Ky., 247 S.W.2d 228 (1952).

■ Turning now specifically to those issues raised by Seaboard and Higgs, each contends that the testimony of David Lee as to the train's speed was based upon assumption, rather than the evidence. It is true that opinion testimony of experts cannot be based on mere assumption. *Alexan-*

*der v. Swearer,* Ky., 642 S.W.2d 896 (1982). However, there was evidence in the record upon which Lee based his opinion; there was, therefore, no error in admitting his findings.

■ Seaboard also contends that the police officer's testimony as to speed was incompetent because of the brief time he observed the train. The officer had substantial experience estimating the speed of vehicles and was in a position to observe the train for several seconds. Under the circumstances, his opportunity to observe was sufficient, and it was the jury's duty to weigh his credibility. *Clement Brothers Construction Co. v. Moore,* Ky., 314 S.W.2d 526 (1958).

■ As to Seaboard's objection to David Lee's reliance on a local newspaper article in his estimate of the intersection's traffic count, we agree that the credibility of such information is speculative. However, Lee's opinion that the warnings were inadequate and the crossing extra hazardous was based on other admissible evidence. In addition, Mr. Roberts had testified that the traffic count at the crossing was approximately 9,200 cars daily, from which the jury could determine the traffic volume at the intersection. We do not believe that the admission of the opinion was reversible error.

■ Finally, Seaboard argues that the court erred in giving an instruction based upon the crossing being extra hazardous. Railroad crossings, which are considered sufficiently dangerous that something more may be required than the usual and accepted manner of signaling the approach of a train, are extra hazardous crossings. A greater degree of care is required at such crossings, by both the railroad and the traveler. *Piersall's Adm'r. v. C & O Ry. Co.,* 180 Ky. 659, 203 S.W. 551 (1918). Here, there was evidence that the warehouse presented a real and substantial obstruction of sight of oncoming trains from the west, and that the traffic volume at the crossing was such to render it extra hazardous and, therefore, supports the trial court's instruction. *Hargadon v. Louis-*

*ville & Nashville Railroad Co.,* Ky., 375 S.W.2d 834 (1964).

■ Nor can we agree with Seaboard that as a matter of law, regardless of the extra hazardous nature of the crossing, its warnings were adequate. This case is not akin to *Fryrear v. Kentucky & I. Terminal R. Co.,* 310 Ky. 250, 220 S.W.2d 546 (1949). There, the crossing was not adjudged to be extra hazardous. Here, where a crossing may be extra hazardous, we can not say that the mere ringing of a bell and the presence of automatic signals were sufficient as a matter of law. Given the extra hazardous nature of the crossing, the jury could reasonably conclude that greater safety measures should have, and could have, been taken by Seaboard.

■ We now turn to the remaining issues raised by Robert Anderson, Jr. Mr. Anderson contends error in the trial court's instruction to the jury that, if they found the crossing to be unusually dangerous, then he had a higher duty of care in proceeding across the tracks, if he knew, or should have known, that the crossing was dangerous. He argues that a higher duty evolved only if he saw, or knew, that the crossing was hazardous. *L. & N.R. Co. v. Crockett's Admx.,* 232 Ky. 726, 24 S.W.2d 580 (1930). It appears that *Crockett* was modified by *Cox' Adm'r. v. C., N.O. & T.P. Railway Co.,* 238 Ky. 312, 37 S.W.2d 859 (1931), and that a motorist is now required to use the duty of ordinary care in making a determination as to whether a crossing is hazardous. Thus, the court properly instructed the jury of Mr. Anderson's higher duty, if he knew or should have known of its hazardous nature.

■ The jury was also advised that Anderson had a duty to operate his automobile at a "reasonable" speed. He contends that because no evidence existed to indicate otherwise, such instruction was unwarranted and prejudicial. An instruction enumerating the basic duties of a driver is not erroneous, even if one or more of those duties is not technically at issue. *Sparks v. Doe,* Ky., 379 S.W.2d 252 (1964). We do not find that the instruction, although tech-

nically incorrect, was prejudicial to Mr. Anderson.

■ The primary issue raised by Citizens State Bank has been particularly onerous and troublesome for this Court, given what we believe is an unreasonable principle of law growing out of *Bays v. Cox' Adm'r.*, 312 Ky. 827, 229 S.W.2d 737 (1950), and its progeny, and that we are necessarily constrained to a strict adherence to *stare decisis*.

The jury awarded the plaintiff, Citizens, the sum of $500,000, apportioning 50% of the liability to Mr. Anderson, and 50% to Seaboard. By the provisions of KRS 411.130(2),[2] proceeds recovered would normally be distributed to Mrs. Anderson's surviving husband, appellant Robert E. Anderson, Jr., and her daughter Amber, one-half to each.

On Seaboard's post-trial motion, the court, citing *Bays v. Cox' Adm'r., supra,* reduced the total award by $250,000—that amount which Mr. Anderson was entitled to receive under KRS 411.130. The liability for the remaining $250,000—to be received only by Amber as the only child of Mrs. Anderson—was apportioned $125,000 against Seaboard and $125,000 against Mr. Anderson. In *Bays*, the deceased was survived by her husband and two children. Her death was shown to be caused by the concurring negligence of her husband and an unrelated tort-feasor. The court prohibited any recovery by the negligent tort-feasor beneficiary and reduced the liability for the remaining award against both tort-feasors in proportion to their initial liability. The underlying premise of *Bays*—that a joint tort-feasor shall not be compensated as a result of his own negligence—is, ironically, partially defeated by its own application. It denies a direct award to the tort-feasor who is also a beneficiary, while reducing the liability of the non-beneficiary joint tort-feasor.

The apparent inequity of the *Bays* decision has not gone unnoticed. In *Cox v. Cooper*, Ky., 510 S.W.2d 530 (1974), the court observed:

As an original proposition, a good argument can be made to the effect that in such a case the recovery to the estate should not be diminished at all, because if it is, as in this very example, the wrongdoer gains back half of what he loses. A better policy would pass that would otherwise be his share of the recovery onto those who would take if he were dead—we might have given favorable consideration to adopting such a policy had the administratrix brought the question to us, but sadly she did not, so we must live for the time at least with the ruling in *Bays v. Cox' Adm'r.*, 312 Ky. 827, 229 S.W.2d 737 (1950).

Citizens has now brought the question to us. We are, of course, bound by the doctrine of *stare decisis*, and, therefore, cannot overrule *Bays*. However, with the demise of contributory negligence resulting from *Hilen v. Hays*, Ky., 673 S.W.2d 713 (1984), the premise underlying *Bays* has been eroded.

In *Hilen*, the long standing doctrine of contributory negligence was supplanted by the more equitable principle of comparative negligence:

Henceforth, where contributory negligence has previously been a complete defense, it is supplanted by the doctrine of comparative negligence. In such cases contributory negligence will not bar recovery but shall reduce the total amount of the award in proportion that the claimant's contributory negligence bears to the total negligence that caused the damages. *Id.* at 720.

By the pronouncement in *Hilen*, we are convinced that the doctrine of *Bays*, to the extent it is grounded in contributory negligence, is overruled, and we are compelled to modify its application here.

2. The amount recovered, less funeral expenses and the cost of administration and costs of recovery including attorney fees, not included in the recovery from the defendant, shall be for the benefit of and go to the kindred of the deceased in the following order: (b) If the deceased leaves a widow and children or a husband and children, then one-half (½) to the widow or husband and the other one-half (½) to the children of the deceased.

We point out that KRS 411.130 does not authorize an action on behalf of the estate, but on behalf of the individual beneficiaries. Even *Bays*, in apparent recognition that the innocent beneficiaries' entitlement should remain intact, left unaffected the recovery of the remaining beneficiaries. Here, Amber is entitled to one-half the total award, or $250,000, which shall be paid in equal proportion by Seaboard and Anderson. Regardless of the identity of the tort-feasors, Amber's statutory share is neither reduced nor enhanced. We leave this portion of the trial court's judgment undisturbed.

Mr. Anderson, however, while not completely precluded from recovery, is barred to the extent that his negligence caused the death of his wife. Thus, the portion of the award to which Mr. Anderson is entitled by statute, $250,000, shall be reduced by 50% to the sum of $125,000.

The total amount of the award, $375,000 —$250,000 representing Amber's share, and $125,000 representing Mr. Anderson's share—shall be paid to Citizens in equal amounts from Seaboard and Mr. Anderson, $187,500 each.

Having so held, we briefly address the remaining issues. The estate has argued that its costs and attorney's fees should have been figured from the initial, not the diminished, award. Although revision must be made to bring fees and costs into conformity with this opinion, we find no reason to otherwise disturb the finding of the circuit court.

It was further argued that Seaboard was not entitled to a reduction in the award, having failed to make such motion before the case went to the jury. The theory, we suppose, is that a jury so instructed might have, in some way, "compensated" for the lost money. Our holding that the doctrine of comparative negligence is applicable to the question, disposes of the need to address such issue.

The judgment of the circuit court is affirmed in part as provided herein, reversed and remanded as otherwise set forth with instructions for the entry of judgment consistent with this opinion.

DYCHE, J., concurs.

MILLER, J., concurs in part and dissents in part by separate opinion.

MILLER, Judge, concurring in part and dissenting in part.

I concur with the majority on the issues relating to trial. I dissent as to diminishing the award. I would order each tort-feasor to pay the entire award to the personal representative for literal distribution under Kentucky Revised Statutes (KRS) 411.130.

I agree that *Bays v. Cox' Adm'r*, 312 Ky. 827, 229 S.W.2d 737 (1950), is based upon the premise that one should not benefit from his intentional (criminal) act, and that the court erred in extending the rule to negligence cases. However, in my opinion, *Bays* is no longer authority for the issue at hand. At the time it was decided, the doctrine of joint and several liability was entrenched. The jury in *Bays* apportioned damages, but not fault. The judgment fixed the responsibility as between the defendants but did not attempt to alter the rights of the plaintiff as against the defendants as joint tort-feasors. As to the plaintiff, each defendant was therefore liable for the whole. We have now come to the point where the jury apportions both damages and fault, not only fixing the rights of the plaintiff against all defendants, but also the rights of the defendants among themselves. See *Dix & Associates Pipeline Contractors, Inc. v. Key*, Ky., 799 S.W.2d 24 (1990), and *Prudential Life Ins. Co. v. Moody*, Ky., 696 S.W.2d 503 (1985). If one overlooks *Bays* as resting upon an improper premise, the case may nevertheless have had some merit in the days of joint and several liability, but it has none now. Theoretically, the rule would have prevented a joint wrong-doer from benefiting by collecting the totality of damages, which he helped bring about, from his co-tort-feasor(s). Today, such is improbable.

In holding that each tort-feasor should pay the personal representative the amount of the award for literal distribution under KRS 411.130, I see no offense to public policy. Certainly, if Mr. Anderson had maintained an accident policy on his wife, he would have been entitled to collect the proceeds.