Sheila Kaye JEWELL, Administratrix of the Estate of Gregory L. Jewell, Deceased; Sheila Kaye Jewell, Individually; Stacey Jewell Lemon, Guardian for Brittney Jewell, a Minor; Stacey Jewell Lemon, Individually, Plaintiffs–Appellants,

v.

CSX TRANSPORTATION, INC., Defendant–Appellee.

No. 94–6249.

United States Court of Appeals, Sixth Circuit.

Argued April 19, 1996.

Decided Jan. 29, 1998.

Charles S. Wible (argued and briefed), Jeffrey T. Sampson (briefed), Charles S. Wible Law Offices, Owensboro, KY, David G. Hatfield, Gerling Law Offices, Evansville, IN, for Plaintiffs–Appellants.

Edward H. Stopher (argued and briefed), Martin H. Kinney, Jr. (briefed), Boehl, Stopher & Graves, Louisville, KY, for Defendant–Appellee.

Before: SILER, and COLE, Circuit Judges; BELL, District Judge.*

## OPINION

BELL, District Judge.

Plaintiffs–Appellants appeal from a judgment of no cause of action in this personal injury diversity action arising out of a collision between a pickup truck and a train.

### I.

The accident that gave rise to this case occurred in a rural area of Henderson County, Kentucky, where the Anthouston–Frog Island Road crosses the CSX Transportation, Inc. (hereinafter "CSX") railroad grade crossing. The Anthouston–Frog Island Road crosses the tracks at a 45–47 degree angle. As the road approaches the crossing it narrows and goes up an incline to cross the elevated tracks. On the date of the collision the only warning devices were standard cross bucks. There were no lights, bells, or mechanical gates.

At about 6:00 p.m. on March 11, 1990, Greg Jewell was driving his pickup truck west on Anthouston–Frog Island Road with his wife Sheila Jewell, and his six-year old daughter Brittney Jewell. As his truck crossed the tracks it was struck by a southbound CSX train which approached the crossing from Greg Jewell's right. All three passengers were thrown from the truck. Greg Jewell was killed and his wife and daughter were injured.

Sheila Jewell, as administratrix of the estate of Gregory Jewell and on her own be-

* The Honorable Robert Holmes Bell, United States District Judge for the Western District of Michi-gan, sitting by designation.

half, and Stacy Lemon[1], as guardian of Brittney and on her own behalf, filed suit against CSX. They alleged that CSX was negligent in failing to sound a warning as the train approached the crossing, that the train crew failed to exercise ordinary care in the operation of the train and that the subject crossing was extra-hazardous.

Prior to trial the district court denied Appellants' Second Amended Motion in Limine to exclude testimony regarding statements made by Brittney concerning an alleged argument between Greg and Sheila immediately before the collision. The case was tried before a jury from July 25, 1994 to August 4, 1994. At the close of Appellants' evidence the district court issued a directed verdict in favor of CSX on the issue of the extra-hazardous crossing. The jury returned a verdict in favor of CSX.

## II.

Appellants contend that the trial court erred in directing a verdict in favor of CSX on the Plaintiffs' claim that the subject crossing was extra-hazardous.

█ We review a district court's ruling on a motion for directed verdict de novo. *Bills v. Aseltine,* 52 F.3d 596, 605 (6th Cir.), *cert. denied,* 516 U.S. 865, 116 S.Ct. 179, 133 L.Ed.2d 118 (1995). In other words, we, like the district court, must determine whether there was sufficient evidence presented to raise a material issue of fact for the jury. *Monette v. AM–7–7 Baking Co.,* 929 F.2d 276, 280 (6th Cir.1991). A directed verdict is proper only where no reasonable juror could find for the nonmoving party. *Bills,* 52 F.3d at 605.

█ Because this is a diversity case the substantive law on the issue of an extra-hazardous crossing is governed by Kentucky law. *See Davis v. Mutual Life Ins. Co.,* 6 F.3d 367, 383 (6th Cir.1993), *cert. denied,* 510 U.S. 1193, 114 S.Ct. 1298, 127 L.Ed.2d 650 (1994). Under Kentucky law, a railroad is not required to have gates, lights, or other warnings at a crossing unless there is a statute imposing such an obligation, or the

circumstances are such that ordinary prudence and foresight would anticipate the need for additional warnings, as in the case of an extra-hazardous crossing. *Wright v. Illinois Central Gulf R.R. Co.,* 550 S.W.2d 489, 491 (Ky.1977). The rationale of the extra-hazardous crossing doctrine is that there are some circumstances under which the ordinarily prudent person would not be sufficiently alerted by the usual and statutory signals and would not appreciate the degree of danger involved unless given greater warning of the actual approach of a train. *Hargadon v. Louisville & Nashville R.R. Co.,* 375 S.W.2d 834, 837–38 (Ky.1963).

█ Appellants argued at trial that the Anthouston–Frog Island Road crossing presented just such a circumstance, and that CSX was negligent in failing to provide additional warnings or signals at the crossing. They introduced the testimony of two experts who opined that the crossing was extra-hazardous because the railroad crossed the road at an acute angle, thus requiring a driver to look more than 90 degrees to his right to see an approaching train from the north. Compounding the difficulties presented by the acute angle, the experts noted the glare from the setting sun, the blind spot in the vehicle, and the natural tendency of such factors as the narrow crossing, the inability to see oncoming vehicle traffic due to the elevated railroad bed, and the ruts in the road to distract drivers from paying attention to approaching train traffic.

The district court determined that the crossing was not extra-hazardous as a matter of law because there were no physical obstructions to Greg Jewell's ability to see and hear.

Appellants contend that the district court improperly determined that Kentucky law required "actual physical obstructions" to support an extra-hazardous crossing instruction, and that the testimony of their expert witnesses was sufficient to create a question of fact as to the extra-hazardous nature of the crossing.

---

**1.** Stacy Lemon is Greg Jewell's former wife, and     the mother of Brittney Jewell.

The latest ruling from the Kentucky Supreme Court on the principle of extra-hazardous crossings is found in *Wright, supra:*

> An extra-hazardous crossing is one that obscures the view of the traveling public approaching a crossing. This may consist of cuts, embankments, vegetation or other obstacles that obstruct the view of the traveling public in close proximity to the crossing.

550 S.W.2d at 491.

In *Hargadon, supra,* the state's highest court upheld a directed verdict in favor of the railroad at the close of the plaintiff's case. The court held that the extra-hazardous crossing principle does not apply unless there is "a real and substantial obstruction to sight or hearing." 375 S.W.2d at 838. Despite the fact that the road and the tracks met at an acute angle that required the driver to look more than 90 degrees to his right to see the tracks, the court found an absence of any real obstructions to the sight or hearing of a driver willing to make the slightest effort to see and hear. *Id.*

In *Citizens State Bank v. Seaboard System R.R.,* 803 S.W.2d 585, 588 (Ky.Ct.App. 1991), the court held that a large warehouse at the intersection of the road and the railroad tracks presented a "real and substantial obstruction" of sight of oncoming trains.

Appellants cite *Louisville and Nashville R.R. Co. v. Quisenberry,* 338 S.W.2d 409 (Ky.1960), in support of the proposition that if a crossing by reason of its location and surroundings was unusually dangerous, a jury could find that additional precautions were necessary.[2] Appellants contend that because they introduced expert testimony that the crossing was unusually dangerous, the trial court was required to submit the issue of the adequacy of the precautions to the jury.

*Quisenberry* is not as broad as Appellants assert. In fact, it is consistent with all the other Kentucky cases that have required actual obstructions to sight or sound. The *Quisenberry* court noted the sharp curve in the track 300 feet north of the crossing and a bluff or cut on the concave side of the curve which obscured the vision of an operator proceeding south. *Id.* at 410. Furthermore, the court found that the crossing was so constructed that "neither the engineer nor the decedent had enough time to do anything to prevent the accident after they came within view of each other." *Id.* at 411.

The district court was correct in its determination that the test for an extra-hazardous crossing under Kentucky law is whether there is a real and substantial obstruction to sight or hearing. The district court was also correct in its determination that this test requires an actual physical inability to see or hear, and not merely such human factors as a disinclination to look for a train due to the angle of the intersection, distractions or diversions.

In this case there was no structure or object that would have impaired Greg Jewell's view of the train. Appellants' expert, Dr. Harry Snyder, testified that if one stands in the road where the driver's eye would be, a train would be visible from the last 2,200 feet to the crossing. He testified that "[t]here is nothing in the way. There is nothing physically between the road and the train to get in the way except the vehicle that one might be driving in." Moreover, the road is straight for the last 1300 feet as it approaches the crossing and the train would have been visible for this entire distance. There was evidence that given the speeds of the truck and the train, Greg Jewell would have had ample time from his first opportunity to see the train to stop the truck. There is no question of fact that there was no physical obstruction at the crossing that prevented Greg Jewell from seeing the train.

The jury should not be permitted to decide whether the railroad should or could have taken other precautions if the evidence does not support an extra-hazardous crossing instruction. In *Illinois Central R.R. Co. v. House,* 352 S.W.2d 819 (Ky.1961), the court

---

**2.** Because this Court is required to apply Kentucky law, the other cases Appellants rely on, which apply Ohio and North Dakota law, are of little value to the Court's analysis. *See Stoler v.* *Penn Cent. Transp. Co.,* 583 F.2d 896 (6th Cir. 1978); and *Herold v. Burlington Northern, Inc.,* 761 F.2d 1241 (8th Cir.), *cert. denied,* 474 U.S. 888, 106 S.Ct. 208, 88 L.Ed.2d 177 (1985).

held that it was error to give the extra-hazardous crossing instruction and reversed the judgment for Plaintiffs where the photographs conclusively demonstrated that the trees, brush and undergrowth did not obstruct the view so as to obscure the approach of the train. *Id.* at 821–22.

This Court concludes that because there were no physical obstructions to Greg Jewell's view of the train, the district court correctly concluded that there was not sufficient evidence to support an extra-hazardous crossing instruction.

### III.

■ Appellants contend the trial court committed reversible error by admitting statements made by Brittney Jewell regarding an alleged argument between Greg and Sheila Jewell immediately before the collision. Prior to trial Appellants filed a motion in limine to exclude testimony of what Brittney told others about the accident because the evidence was inherently unreliable. The trial court denied the motion and admitted the evidence under the party admission exception to the hearsay rule. Fed.R.Evid. 801(d)(2)(A).

At trial CSX introduced testimony from six witnesses that Brittney told them that Greg and Sheila had been arguing immediately prior to the accident, and that when she told them a train was coming, she was told to be quiet.

Appellants offered evidence that Brittney suffered permanent brain damage as a result of the accident. Her physicians testified that she had retrograde amnesia and had no memory of the accident. They also testified that patients recovering from a coma have a tendency to grasp onto anything they hear to supplement their memory. They offered testimony from family members that Brittney may have overheard their conversations where they speculated about the cause of the accident, including the possibility of an argument between Greg and Sheila. Even those Brittney told about the argument testified that she simultaneously made statements about the accident that were clearly inaccurate.

■ We review the trial court's admission of testimony and other evidence under the abuse of discretion standard. *United States v. Bonds,* 12 F.3d 540, 554 (6th Cir.1993).

Rule 801(d)(2)(A) provides that a statement is not hearsay if the statement is offered against a party and is "the party's own statement in either an individual or representative capacity." Fed.R.Evid. 801(d)(2)(A).

Appellants contend that because Brittney suffered brain damage and has no "independent" recollection of the accident, her statements about the argument were not made in her "individual" capacity.

Appellants' argument lacks logical consistency. They have confused the terms "independent" and "individual." "Independent" and "individual" are not synonymous. Brittney was the source of the statements. She made the statements in her individual capacity, whether or not she had an independent recollection of the matters she spoke about.

■ Trustworthiness is not a separate requirement for admission under Rule 801(d)(2)(A). *United States v. Pinalto,* 771 F.2d 457, 459 (10th Cir.1985). The admissibility of statements of a party-opponent is grounded not in the presumed trustworthiness of the statements, but on "a kind of estoppel or waiver theory, that a party should be entitled to rely on his opponent's statements." *United States v. DiDomenico,* 78 F.3d 294, 303 (7th Cir.1996). As noted in the advisory committee notes to Rule 801(d)(2)(A), admissions by a party-opponent are excluded from the category of hearsay "on the theory that their admissibility in evidence is the result of the adversary system rather than satisfaction of the conditions of the hearsay rule." Evid. 801 advisory committee's note.

> No guarantee of trustworthiness is required in the case of an admission. The freedom which admissions have enjoyed from technical demands of searching for an assurance of truthworthiness in some against-interest circumstance, and from the restrictive influences of the opinion rule and the rule requiring firsthand knowledge, when taken with the apparently prevalent satisfaction with the results,

calls for generous treatment of this avenue to admissibility.

*Id.*

Appellants' complaints go to the weight to be given Brittney's statements rather than to their admissibility. Whether Brittney's statements were from her independent recollection or were suggested by others, is a matter that goes to her credibility. Appellants were afforded ample opportunity to impeach the credibility of Brittney's statements regarding the argument. Admission of the statements was within the district court's discretion and we find no abuse of that discretion.

## IV.

■ Appellants contend that the jury verdict was not supported by substantial evidence because the totality of the evidence conclusively points to the fact that the train whistle was not blown. Appellants contend that no reasonable jury could have determined that the train sounded its whistle prior to the collision.

In support of this argument Appellants argue that although the conductor of the CSX train testified that the horn was sounded continuously through the crossing even after the collision occurred, every non-railroad employee witness who heard the collision positively testified that there was no whistle following the collision. Appellants contend that this positive testimony completely impeaches the testimony of the train crew.

■ We accord "substantial deference" to jury verdicts. *Davis,* 6 F.3d at 374. In reviewing an appeal based on insufficiency of the evidence, "[w]e may neither weigh the evidence, pass on the credibility of the witnesses, nor substitute our judgment for that of the jury." *Id.* Instead, we must view the evidence in the light most favorable to the appellee, drawing all reasonable inferences in its favor. *Id.*

Because we do not weigh the evidence or pass on the credibility of the witnesses, the testimony of the conductor was sufficient to create a question of fact for the jury. Moreover, Appellants overstate the importance of the evidence of whether the whistle was blown after the collision. The issue for purposes of determining railroad negligence is whether the whistle was sounded *prior* to the collision. All of the train crew and one other witness testified positively that the whistle was sounded. Although seven witnesses testified they did not recall hearing the whistle before the collision, all of them testified on cross-examination that they could not say positively that the whistle was not sounded before the collision.

There was substantial evidence from which a jury could reasonably conclude that the whistle was sounded prior to the accident.

## V.

For the foregoing reasons we AFFIRM the judgment of the district court in its entirety.